**CONTINENTAL CAN COMPANY, Inc., Defendant-Appellant,**

v.

**OLD DOMINION BOX COMPANY, Inc. and Dacam Corporation, Plaintiffs-Appellees.**

**No. 252, Docket 31801.**

United States Court of Appeals Second Circuit.

Argued Feb. 5, 1968.

Decided April 8, 1968.

William K. Kerr, New York City (David W. Plant, New York City, of counsel), for defendant-appellant.

Harold James, New York City (James & Franklin, New York City, on the brief), for plaintiffs-appellees.

Before WATERMAN and FEIN-BERG, Circuit Judges, and BARTELS, District Judge.*

BARTELS, District Judge.

Continental Can Company, Inc. appeals from a declaratory judgment of the District Court holding invalid for want of invention under 35 U.S.C.A. § 103, the patent known as A. J. Weiss Patent (2,990,997), relating to a rotary latching or locking action on wrap-around cartons or carriers, and also holding unenforceable under 35 U.S.C.A. § 135(c) any rights Continental might have had under the Weiss patent.

Old Dominion Box Company, Inc. was engaged in the business of manufacturing and selling cartons and Dacam Corporation was engaged in the business of designing and licensing packaging machinery and equipment (both will be referred to as Old Dominion). In instituting the action Old Dominion alleged not only that the Weiss patent was invalid and unenforceable but also that the patent known as H. Ganz Patent (2,986,857), relating to a machine for wrap-around packaging including the Weiss carton, was also invalid and unenforceable. Infringement of both patents has been conceded and neither party appeals from that portion of the judgment holding the Ganz patent invalid. The trial judge did not rule upon certain claims of invalidity and unenforceability and decided others adversely to Old Dominion. Old Dominion filed no cross-appeal but asserts that all additional grounds supporting the District Court's ruling upon invalidity and unenforceability may nevertheless be

---

* Of the Eastern District of New York sitting by designation.

considered upon this appeal, although decided adversely or not considered by the District Court. It also asserts the right to attorney's fees, which in the absence of a cross-appeal we hereby deny. Standard Acc. Ins. Co. v. Roberts, 132 F.2d 794 (8 Cir. 1942); North Texas Producers Ass'n v. Metzger Dairies, Inc., 348 F.2d 189, 197 (5 Cir. 1965), cert. denied, 382 U.S. 977, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966).

The basic issue in this case is the validity of the Weiss patent. We affirm the District Court's finding of invalidity, rendering unnecessary the disposition of Old Dominion's additional claims and also the resolution of the issue of unenforceability.

### Background

There are two general types of folding cartons, to wit: "set-up" cartons and "wrap-around" cartons. In the set-up carton the sidewalls are held in erected position by overlapping and locking along the sides, leaving the top open in order to permit the contents to be inserted, thus requiring a two-step operation. In the wrap-around type of folding carton the contents are placed on the flat carton blank, which is thereafter erected by being wrapped around the contents and secured in place by locking together overlapping closure panels, thereby completing the enclosure of the contents in a one-step operation.

There are also two types of "wrap-around" cartons, i. e., "open-ended" or four-sided and "closed-ended" or six-sided, the only difference being the presence or absence of the end walls. In wrap-around packaging, at least of the open-ended type, a carton design which insures a secure, tight package is vital. In such cartons the group of containers about which the carton blank is to be wrapped is positioned by the machine on top of the central panel, or that central panel may be placed on top of the containers. As the carton and the containers advance through the wrapping machine, the latter automatically folds the two side panels of the carton against the sides of the containers, and then folds the two closure panels into overlapping position. The carton is thus wrapped in open-ended, rectangular form about its contents, and finally the overlapping closure panels are fastened together by glue, staples, interlocking parts formed in the overlapping panels, or a combination of two of these alternatives. Glue closures, metal staples and punch locking systems or devices in wrap-arounds were found unsatisfactory for various reasons. There was a need for a machine and a carton which permitted a rapid packaging operation producing a carton holding containers securely in the carton and one which could be easily opened and closed. A properly designed machine was just as essential as a properly designed carton, as evident from the use of the Ganz machine for the purpose of packaging the Weiss carton. The trial judge found that "[i]n the matter of invention claimed by the defendant, those patents are closely intertwined." Similarly, the machine which was the subject matter of Arneson Patent No. 2,931,152, cited against the Ganz machine, was designed for use in packaging a carton (asserted by Old Dominion as anticipating the Weiss carton), depicted but not patented.

### Weiss Invention

This invention relates to paperboard cartons and more specifically, to those which are wrapped around a group of containers. Weiss first conceived his invention on October 8, 1957, for which he filed an application on July 15, 1958, and thereafter received a patent on July 4, 1961. The patent describes a wrap-around carrier, typical examples being the familiar "six-pack" carriers of beer or soft drink cans or bottles.

The substance of the invention appears in Claim 1, where Weiss describes the design of a wrap-around carton with two side panels to be folded against the sides of the cans, and two closure panels to be folded into an overlapping position and then fastened by a rotary action of hooking a latching flap with the catches and tongues in one overlapping closure panel

into the latch openings and slots in the other overlapping closure panel, thus producing automatic tightening. In his specifications Weiss stated that it was not too difficult to obtain fastening which produced tightness, but that it was rather difficult to combine the attribute of tightness with the unique facility of easily opening the wrap-around structure.[1] In describing the action of the latch, Weiss said that "the rotary latching action can, *if desired*, produce an automatic tightening of the package as it cams or levers the closure panels into fully closed overlapping position" [2] (emphasis added). The trial judge found that beyond the normal tightness of the container due to its dimensions and extent of overlap, the rotary action produces an automatic tightening effect of about $\frac{1}{32}$ of an inch. Accordingly, the locking structure of the Weiss patent may or may not produce automatic tightening, depending upon the spatial relationship of the overlapping closure panels at the time the carton lock structure is pivoted. Only in Claim 1 does Weiss mention that "the action of the catch will produce an automatic tightening of the sidewalls against the contents as it cams or levers the closure panels into the fully closed overlapping position." [3]

### Prior Art

A number of prior art patents were introduced into evidence, of which only seventeen were pertinent; eleven related to six-sided, folding cartons, and six related to open-end wrap-around cartons. The six wrap-around carton patents relied upon are: Gentry 2,786,572, Gentry 2,827,165, Andre 2,911,096, and Stone 2,975,891, all pertaining to cartons held together by punch locks; Grinspoon 2,798,603, pertaining to cartons held together by tuck flaps; and Currivan 2,922,561, pertaining to cartons held together by glue. These carton patents do not embody the same type of locking

arrangement, nor suggest the combination of tongue, catches and openings employed by Weiss, although the design of the cartons is essentially the same.

The most important of the six-sided, folding carton patents relied upon by Old Dominion are Trogman 2,102,497, Morrison 1,104,821, Close 1,669,454, Pergande 2,060,240, Poe 2,316,362, Crary 2,419,391, Kells 2,572,159, Lighter 2,395,558, and the French Patent 1,063,058.[4] There are also two instances of prior public use of the Ray Paper Box and the Robertson Paper Box, both six-sided wrap-around cartons completely enclosing their contents, which were made and sold in 1951 and 1954. They teach the use of overlapping panels, matching tongues with catches and openings in a locking arrangement for six-sided cartons essentially the same as the arrangement used by Weiss. With the possible exception of the Morrison and French patents, none explicitly recognized the automatic tightening effect resulting from the Weiss combination.

Locking arrangements, typical of the teachings found in the prior art folding cartons, appear in the Morrison and the French patents. Morrison, in his specifications, describes a form of corner locking of adjoining sidewalls of a set-up box by the insertion of tongues and catches on flaps on one sidewall into a set of slots on the adjoining sidewall, to enable the adjoining end to be quickly locked in a durable position. He states that the "straightening of the flap after insertion of the inner tongue 18 into the registering slot causes such tongue and the outer end portion of the flap to exert a leverage action between the inner end portion of the flap and the wall or side portion in which the slot is provided, whereby to draw the flap and wall closely together, and also to draw the end portion of the wall to which the flap is attached firmly against the end of the adjoining

---

1. Col. 1, lines 28–38.

2. Col. 3, lines 18–21.

3. Col. 4, lines 5–8.

4. Of the above patents, only Grinspoon, Gentry 2,786,572, Close, Kells and Trogman were cited by the Patent Office.

wall, as indicated at 19 in Fig. 3." [5] The French Patent also refers to the closing of a box by the use of a tongue integral with the flap to be inserted into a slot in the fixed portion of the box so that the "tongue extends, in the opposite direction from that of its free end, a miter integral with the flap by a folding line forming a hinge, marked out in advance." [6] It further provides that "in particular the closing device can be modified so as to increase the effect of the elastic force which holds the miter in its plane after closing." [7] Continental admits that the locking structure in folding cartons, other than four-sided wraparounds, was old in the art. In fact, Weiss testified that in a general sense, he took his lock from another type of folding carton and incorporated it into a wrap-around carton.

### Invalidity

Essentially, Continental's appeal is based upon two claims: one, that the patents involving the six-sided or folding cartons and the Ray Paper Box and Robertson Paper Box cartons are not relevant prior art and two, that the function of the locking elements in the six-sided cartons is entirely different from the function provided in the combination invented by Weiss relating only to open-ended wrap-around cartons. It argues that the prior art six-sided carton patents and the Ray and Robertson cartons present no problem of losing their contents because they are closed on all sides, whereas the function of the Weiss lock in an open-ended wrap-around carton is to provide a tight package by drawing the sidewalls of the carton against the containers inside the package and then locking the closure panels by a rotary action. Continental emphasizes the fact that automatic tightening as provided by the Weiss invention, was neither intended nor accomplished by the prior art cartons.

Old Dominion contends that the Weiss locking device was amply demonstrated in the prior art patents covering six-sided cartons and also in the Ray and Robertson cartons (which were wrap-arounds), which cartons could be secured in an erected position after the overlapping closure panels had been folded over the contents and locked with tongues with catches inserted in openings, and that the locking structure could be manipulated to produce tightening.

We cannot agree that the prior art patents and cartons relating to conventional six-sided, folding cartons, are not relevant art pertaining to open-ended wrap-around cartons. Nor can we agree that the fact that tightening was not the purpose or function of such locking arrangement, whether disclosed by patent or cartons in prior public use, renders such cartons irrelevant. The issue as to what prior art is relevant depends upon what a skilled person in the field would be expected to know in connection with his art (Graham v. John Deere Company of Kansas City, 383 U.S. 1, 35, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Mott Corporation v. Sunflower Industries, Inc., 314 F.2d 872, 878 (10 Cir. 1963); Application of Shapleigh, 248 F.2d 96, 101–102, 45 CCPA 705 (1957)) and we believe that a person skilled in the art of designing packaging machines and wrap-around cartons would consult the disclosures in the prior art relating to conventional six-sided, folding cartons. In fact, Weiss did exactly that. While the trial judge did not make any specific finding as to what the level of skill in the pertinent art was, we believe that reference to a person who specialized in the art of designing or constructing packaging machines and folding cartons of all types was implicit in his findings.

Admittedly, the Weiss patent is a combination of old elements taken from folding cartons and applied to open-end wraparounds. Undoubtedly, there was a need in the industry for a new locking arrangement in wrap-arounds and, judging from its commercial success, the

5. Col. 2, lines 24–35.

6. P. 1.

7. P. 7.

Weiss invention seems to have met that need. Weiss did achieve an advancement in the art of tight wrap-around packaging at high speeds by combining or arranging certain well-known carton locking structures with a rotary latching action to produce automatic tightening.

■ Under our patent laws it is not sufficient to support patentability that a combination of elements be merely new or even represent a modest improvement in the art. Such combination must also be "nonobvious" to a person having ordinary skill in the art. 35 U.S.C.A. § 103. To uphold patentability where an invention is obvious would be " * * * to remove existent knowledge from the public domain, or to restrict free access to materials already available," which violates not only Section 103 but also the Constitutional criterion. Graham v. John Deere Company of Kansas City, supra, 383 U.S. at p. 6, 86 S.Ct. at p. 688. The danger of removing existent knowledge from the public domain is more acute with respect to inventions involving a combination of elements or devices common in the prior art and therefore, "Courts should scrutinize combination patent claims with a care proportionate to the difficulty and improbability of finding invention in an assembly of old elements." Great Atlantic & P. Tea Co. v. Supermarket Eq. Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). A combination invention is not patentable unless the whole is more than the sum of the parts. Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp., 372 F.2d 263 (2 Cir. 1967).

■ No showing has been made that any of the patents or prior use cartons cited anticipated the Weiss invention under Section 102, 35 U.S.C.A., but this failure does not eliminate such patents and cartons from the field of prior art. Depending upon how it is designed and manipulated, the locking structure of a carton, as we have seen, may or may not produce tightening. The prior art patents and cartons disclose locking structures and devices in six-sided cartons, both set-up and wrap-around, which, as demonstrated in the Morrison and French patents, can produce tightening by means of an increased overlap between the panels produced by a manipulation of the locking arrangement. The combination of the Morrison teachings with the wrap-around art makes the Weiss invention obvious. The differences between the two types of cartons were not sufficient to render nonobvious the application and adaptation of the locking arrangement disclosed in one to the purpose and function of the other.[8]

■ Commercial success and solution of a long-standing need in the art are secondary considerations which cannot breathe life into a patent otherwise invalid because of obviousness. Calmar, Inc. v. Cook Chemical Co., sub nom. Graham v. John Deere Company of Kansas City, supra, 383 U.S. at pp. 35–36, 86 S.Ct. 684; Preuss v. General Electric Co., Inc., 2 Cir., March 14, 1968, 392 F.2d 29. Upon this subject there is some ambiguity as to whether the difficulty in solving the packaging problem and Continental's subsequent commercial success were due to the development of the corresponding packaging machine (i. e., the Ganz machine), the patent for which was declared invalid, as well as to the development of the cartons, especially since the speed of operation was a key feature of the combined carton-machine invention. See, Welsh Manufacturing Co. v. Sunware Products Co., 236 F.2d 225, 227 (2 Cir. 1956); Wilson Athletic G. Mfg. Co. v. Kennedy Sport. G. Mfg. Co., 233 F.2d 280 (2 Cir. 1956).

Finally, mention should be made of the Arneson invention, which the District

---

8. The presumption of validity attaching to issued patents is substantially weakened by the failure of the Patent Office to consider important prior art, such as the Morrison and French patents and the Ray and Robertson boxes. Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536 (2 Cir. 1966); Zoomar, Inc. v. Paillard Products, Inc., 258 F.2d 527 (2 Cir. 1958), cert. denied, 358 U.S. 908, 79 S.Ct. 237, 3 L.Ed.2d 230.

Court found was conceived between May 7, 1957 and June 6, 1957, earlier than the Weiss invention, but made no ruling with respect to reduction of the invention to practice. We are not here concerned with Arneson's anticipation under Section 102, an issue upon which we do not pass, but rather in the disclosures of Arneson's applications as evidence of simultaneous invention. On June 30, 1958 Arneson filed an application for a patent for a single row packaging machine, in which he included a sketch of a wrap-around carton to be used therewith, which was practically identical with the Weiss carton. It is true that in his application he did not claim the carton as part of the invention, but he did refer to folding the wrapper tightly around the cans "so that * * the cans 10 are securely held in the wrapper." [9] On December 24, 1959, over two years after the Weiss invention (October, 1957) and a year and a half after Weiss filed his application (July, 1958), Arneson filed an application for a patent for a wrap-around carton in which the locking elements had the "inherent tendency * * * to draw the blank tight about the articles as the interlocking engagement thereof is accomplished," [10] depicting in his sketches the Weiss locking arrangement. By an amendment dated October 23, 1961, to his 1959 application, Arneson specifically described the "automatic tightening" effect of his device. Thus the sketches of Arneson and his patent applications are evidence of a simultaneous invention and while not in the realm of anticipation or of prior art, nevertheless buttress the conclusion negating nonobviousness of the Weiss invention. Wilson Athletic G. Mfg. Co. v. Kennedy Sport G. Mfg. Co., supra; Felburn v. New York Central Railroad Company, 350 F.2d 416 (6 Cir. 1965), cert. denied, 383 U.S. 935, 86 S.Ct. 1063, 15 L.Ed.2d 852 (1966); "Subtests of 'Nonobviousness': A nontechnical Approach to Patent Validity," 112 U.Pa.L.Rev. 1169, 1181 (1964).

Affirmed.

9. Col. 2, lines 56–58.

10. Plaintiffs' Exhibit EV–1, pp. 8–9.