Jerome H. LEMELSON, Plaintiff,

v.

DeLUXE READING CORPORATION and the Great Atlantic and Pacific Tea Co., Inc., Defendants.

No. 63 Civ. 3663.

United States District Court, S. D. New York.

Jan. 14, 1971.

**1282**

Joseph D. Lazar and Arthur T. Fattibene, New York City, for plaintiff.

David H. T. Kane, New York City (Gerald Levy, Siegrun D. Kane and Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City, on the brief), for defendants.

CANNELLA, District Judge.

Action for infringement of a patent on a toy gun, brought under the Patent Act of 1952, 35 U.S.C. § 1 *et seq.*, is dismissed.

The court finds that on December 6, 1960 the plaintiff was issued a patent on a toy gun containing a ricochet noise mechanism, United States Letters Patent No. 2,962,837. This mechanism simulates the sound of a ricocheting bullet through use of a reed-like noisemaker which is activated by the sudden expansion of a spring-loaded bellows.[1] Following issuance of the patent, the defendant DeLuxe Reading Corporation [hereinafter "DeLuxe"] manufactured and marketed within this District toy guns called the "Jungle Jack" and the "Johnny Eagle Red River" which allegedly infringe plaintiff's patent. The co-defendant The Great Atlantic and Pacific Tea Company [hereinafter "A & P"] sold the "Jungle Jack" within this District.[2]

The court has jurisdiction pursuant to 28 U.S.C. §§ 1338, 1400.

The defendants contend that the patent is neither valid nor infringed by their guns. In attempting to overcome the statutory presumption in favor of a patent's validity,[3] they argue that plaintiff's patent is invalid for lack of novelty under 35 U.S.C. § 102, for obviousness under 35 U.S.C. § 103, and for failure to make an adequate disclosure under 35 U.S.C. § 112.

1. See Plaintiff's Exhibit 1, a copy of figures 1 and 2 of which is appended to this opinion.

2. See Defendants' Answer, p. 2.

3. See 35 U.S.C. § 282. The defendants allege that this presumption is undercut severely by the Patent Office's failure to consider "significant prior art" and by misrepresentations of the plaintiff to the Patent Office. However, the significance of the "prior art" submitted by the defendants is dubious. Moreover, the Patent Office did search in the appropriate categories prior to issuing the patent and cited the prior patents which it considered significant. See Plaintiff's Exhibit 9, p. 73; Trial Minutes, p. 277.

The alleged misrepresentations by the plaintiff are his statement that nothing would happen when a bellows noisemaker from a certain Lawson patent is substituted for the siren of a certain Rotfeld patent and the further statement that the prior art contained no ricochet sounding patents. However, a review of the entire record has not persuaded the court that there is any basis for the contention that the plaintiff made these statements with knowledge of their falsity or that the Patent Office relied upon them. See Plaintiff's Exhibit 9, pp. 47, 73. See generally Walker Process Equipment, Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945).

## VALIDITY

The court finds that while plaintiff's patent does contain a combination of elements known in the prior art—*e. g.* a bellows, a spring, a reed-like noisemaker, a trigger mechanism—nowhere in the prior art is the patent "identically disclosed." See Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp., 372 F.2d 263, 267 (2d Cir. 1967). The plaintiff's patent is therefore not invalid for lack of novelty. The "fact that each element of a creation * * * is found in the prior art does not negate novelty if the old elements are combined in such a way that as a result of the combining an improved, useful, and more advantageous innovation is obtained." Shaw v. E. B. & A. C. Whiting Co., 417 F.2d 1097, 1101 (2d Cir. 1969).

■ Section 103 of Title 35, U.S.C. provides that a patent may not be obtained "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Therefore, the court is obliged to determine the scope and content of the prior art, differences between the prior art and the claims at issue; and the level of ordinary skill in the pertinent art. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

The prior art primarily relied upon by the defendants[4] consists of the following patents:

| PATENTEE | PATENT NO. | DATE FILED |
| --- | --- | --- |
| Briggs | 387,761 | Aug. 14, 1888 |
| Pickl | 1,188,315 | June 20, 1916 |
| Willett | 1,205,498 | Nov. 21, 1916 |
| Parsons | 1,582,778 | April 27, 1926 |
| Bocchino | 1,769,251 | July 1, 1930 |
| Mueller | 1,880,354 | Oct. 4, 1932 |
| Crisler | 2,418,399 | April 1, 1947 |
| Wolf | 2,459,300 | Jan. 18, 1949 |
| Hjelm | 2,527,254 | Oct. 24, 1950 |
| Singer | 2,534,996 | Dec. 19, 1950 |
| Everett | 2,561,849 | July 24, 1951 |
| Christopher | 2,734,310 | Feb. 14, 1956 |

The Briggs patent is a toy gun adapted both for spinning a top and shooting a ball. The barrel of this gun contains a rod which causes a top on the upper portion of the gun to spin when the rod is released by a detent, trigger and spring. The Pickl patent is a toy gun with a barrel that contains a leaf spring which is actuated by trigger, thus allowing the free end of the spring to strike a drum and produce the simulated sharp report of a pistol. The Willett patent is a toy gun with a steel sounding plate which emits a single sharp report or similar successive or ricochet sounds when it is hit by a hammer actuated by a trigger and cam.

The next three patents on the above list are not toy guns. The Parsons patent is a toy doll containing a spring-enclosed bellows which makes a crying sound when actuated by a bell crank lever and a suction cup. The Bocchino patent is simply a toy bellows containing a wind-operated reed. The Mueller patent shows a fluid gun (not a toy) in which liquid is ejected from a bellows by means of a construction plunger, which is placed in motion through release of a compressed spring by a trigger.

The six remaining patents cited by the defendants are toy guns. The Crisler patent uses a trigger mechanism in a rifle to release a hammer spring, allowing a striker to hit a sounding anvil to produce a simulated sharp report. The Wolf patent provides two suction cups which are pulled apart by a lever connected to the trigger, thus causing a report. The Hjelm patent involves a spring which is released by the trigger to discharge a projectile. The Singer patent has a deflatable rubber handle which is squeezed to produce whistle sounds. The Everett "toy smoking gun" contains a bellows, one end of which is linked to the hammer by a rigid member. Cocking the hammer expands the bellows and snapping the hammer collapses it, allowing a small amount of powder to escape,

4. See Defendants' Exhibit K.

thereby creating the illusion of a smoking weapon. The Christopher patent simulates the sound of a ricocheting bullet either by a sound-amplifier mounted near a recording disc and needle or by a lug on a revolving disc which strikes a sound-making comb and then a tuning fork.

In addition to this prior art, two patents were cited by the Patent Office as best exemplifying the prior art. A Rotfeld patent, No. 2,648,159, filed Feb. 7, 1952, is a toy siren and chromatic gun. It consists of a spring actuated piston attached to one end of a rod located in the gun's barrel which is pulled back manually using a knob attached to the other end of the rod. After the rod has compressed the spring, a locking flange adjacent to the piston engages part of the trigger mechanism to hold the spring compressed. When the trigger is pulled, the rod is released and the compressed air that results escapes through a siren located at the muzzle end of the barrel, causing a wailing noise. A Lawson patent, No. 2,-598,807, filed Oct. 29, 1948, is a jack-in-the-box containing a spring actuated bellows with a reed which produces a sound upon expansion of the bellows when the top of the box is released.

▇ After carefully considering all of the above patents, this court is not persuaded that plaintiff's patent would have been obvious at the time of the invention to a person having ordinary skill in the art.[5] While the ordinary skill in the art at that time clearly was quite high, it is important to note that no one in the art had invented a gun that simulated the sound of a ricocheting bullet by the sudden expansion of a spring-loaded bellows prior to the time of plaintiff's invention. In this regard, it is imperative that courts not fall into the trap of combining elements from a wide range of prior art to conclude, by the use of infallible hindsight, that a patent is obvious where persons skilled in the art have failed to combine these elements to produce such a result. See Dempster Bros. v. Buffalo Metal Container Corp., 352 F.2d 420, 422 (2d Cir. 1965), cert. denied, 384 U.S. 940, 86 S.Ct. 1458, 16 L.Ed.2d 539 (1966); Reiner v. I. Leon Co., 285 F.2d 501, 503–504 (2d Cir. 1960), cert. denied, 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961). A patent is obvious when the old elements as they are combined perform no new, different, or additional function or operation than they theretofore had performed. Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); Great A & P Tea Co. v. Supermarket Corp., 340 U.S. 147, 151–152, 71 S.Ct. 127, 95 L.Ed. 162 (1950). Judge Hand has pointed out that "[a]ll machines are made up of the same elements, * * *. But the elements are capable of an infinity of permutations, and the selection of that group which proves serviceable to a given need may require a high degree of originality. It is that act of selection which is the invention." B. G. Corp. v. Walter Kidde & Co., 79 F.2d 20, 22 (2d Cir. 1935). The plaintiff's patent demonstrates such originality by using the old elements in a particular combination previously unknown to the prior art.[6]

5. See Trial Minutes, pp. 225–229. The cases cited by the defendants in which combination patents were held to be invalid for obviousness do not support their contention of obviousness herein. See, e. g., Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973 (1945) (use of diluted as opposed to concentrated hydrochloric acid in oil drilling); Great A & P Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950) (extending a counter and mobile frame used in grocery stores); Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536 (2d Cir. 1966) (a cumberbund that fits all); Continental Can Co. v. Old Dominion Box Co., 393 F.2d 321 (2d Cir. 1968) (using a locking action on an open-end wrap-around carton as well as on folding cartons).

6. See, e. g., Shaw v. E. B. & A. C. Whiting Co., 417 F.2d 1097, 1104–1105 (2d Cir. 1969).

The invention combines for the first time a spring actuated bellows, a reed-like noisemaker, a compressing system, and a trigger mechanism. Moreover, its method of operation is unique.[7] An actuator compresses a spring-loaded bellows until a projection on the actuator engages a projection on the trigger element. The bellows expands after these projections are disengaged by a pulling of the trigger.[8] This patent is also unique in the specific result it achieves.[9] The rapidly expanding bellows simulates the sound of a ricocheting bullet. In the relevant art prior to plaintiff's patent, the only elements used for simulating a ricochet sound were a tuning fork, a disc recording, and a sounding plate. The court finds that these devices contain disadvantages which would naturally tend to discourage the search for new mechanisms to produce the same effect [10] and that plaintiff's patent is not invalid for obviousness.[11]

The defendants also urge that plaintiff's patent is invalid on the grounds of failure to make an adequate disclosure to the Patent Office of the construction of the bellows.[12] However, while the Patent Office cited many errors in the plaintiff's original patent application, it did not question the description of the bellows.[13] Moreover, the description of the bellows in plaintiff's patent is just as precise as the description given in prior patents.[14] In any event, the fact that several bellows would have to be tried by persons skilled in the art in order to reach the desired sound does not invalidate the patent. Cf. Reeves Bros., Inc. v. U. S. Laminating Corp., 282 F. Supp. 118, 128 (S.D.N.Y.1968), aff'd, 417 F.2d 869 (2d Cir. 1969). The court therefore finds that the plaintiff's disclosure complies with 35 U.S.C. § 112 and that his patent is valid.

## INFRINGEMENT

The plaintiff alleges that DeLuxe infringes Claims 1 and 2 of his patent by manufacturing and selling the Johnny Eagle Red River gun, and infringes Claim 2 by manufacturing and selling the Jungle Jack Ricochet Sounding gun. In addition, the plaintiff alleges that the A & P infringes Claim 2 of his patent by selling the Jungle Jack gun.

Claim 2 of plaintiff's patent describes the invention as follows:

2. In the mechanical combination of a manually portable toy gun consisting essentially of a shaped hand grip portion, a barrel portion, a trigger element for simulating the firing

7. See, e. g., Electric Pipe Line, Inc. v. Fluid System, Inc., 132 F.Supp. 123, 127 (D.Conn.1955), aff'd, 231 F.2d 370 (2d Cir. 1956).

8. See Plaintiff's Exhibit 1 and the Appendix hereto.

9. See, e. g., Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 247 F.2d 343 (2d Cir. 1957), cert. denied, 355 U.S. 952, 78 S.Ct. 537, 2 L.Ed.2d 529 (1958).

10. See United States v. Adams, 383 U.S. 39, 52, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

11. The court finds it unnecessary to go into secondary considerations. See Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) ; Scott Paper Co. v. Fort Howard Paper Co., 432 F.2d 1198, 1203–1204 (7th Cir. 1970) ; Preuss v. General Electric Co., 392 F.2d 29, 33 (2d Cir.), cert. denied, 393 U.S. 834, 89 S.Ct. 105, 21 L.Ed.2d 104 (1968).

12. Section 112 of Title 35, U.S.C. provides that the "specification shall contain a written description of the invention * * * in such full, clear, and exact terms as to enable any person skilled in the art to which it pertains * * * to make and use the same * * *."

13. See Plaintiff's Exhibit 9, pp. 42–43.

14. See the Everett, Parsons and Mueller patents in Defendants' Exhibit K.

of a gun and a sound producing mechanism located within the gun, the improvement which comprises:

(a) a collapsible bellows device,

(b) a spring loaded bellows compressing means for compressing said bellows and temporarily holding the bellows in a substantially collapsed condition,

(c) means associated with said trigger element for releasing said spring loaded compressing means and thereby causing the collapsed bellows to suddenly expand,

(d) said collapsible bellows device being provided with a noise making device which is actuated when said bellows moves from a compressed to an expanded position,

(e) whereby when said collapsible bellows is compressed under the action of said bellows compressing means and then subsequently the trigger element is caused to release said bellows compressing means, said collapsed bellows will suddenly expand and emit a sound which children can imagine and associate with the sound of a ricochetting bullet.

Claim 1 differs from Claim 2 by describing the collapsible bellows as being at one end of the barrel and the bellows compressing means at least partially within the barrel. It also differs in that the bellows is temporarily locked (not temporarily held) in a substantially collapsed condition.

The court finds that the Johnny Eagle gun does not follow the exact specifications in Claim 1. The Johnny Eagle places its bellows in the stock of the gun, completely separated from the barrel by the trigger mechanism. Furthermore, the linkage of the compressing mechanism of the Johnny Eagle gun is adjacent to the barrel and not partially within it.

The court further finds that neither Jungle Jack nor Johnny Eagle fall within the precise description of Claim 2 since they do not employ the compressing or the trigger mechanism used in plaintiff's patent. As shown in the Appendix, the compressing mechanism consists of an actuator (23), a spring (27), a projection (21) of arm (19) and projection (24) of the actuator. The actuator compresses the bellows by sliding from the expanded position (Fig. 2) to the compressed position (Fig. 1). The projection (24) on the lower end of the right face of the actuator engages the projection (21) on the arm of the trigger mechanism to lock the bellows in a compressed position. The trigger mechanism employs a trigger which pivots on pins (17 and 18') when it is squeezed, thus disengaging projection (21) from projection (29) and thereby allowing the compressed spring (27) to expand and move the actuator forward. This permits the bellows to expand rapidly.

The Jungle Jack gun differs significantly from this patent in both structure and mode of operation. This gun has a combined compressing and trigger mechanism composed of a lever, lever torsion spring, hammer, trigger, and hammer torsion spring. When the trigger is pulled, the upper portion of the trigger engages the hammer, pushing the hammer upwards, which in turn rotates the front end of a lever down onto the bellows and compresses it. As the trigger is squeezed further (there is no locking action as in the patent), the hammer releases the back end of the lever, allowing the bellows to expand and produce a ricochet sound.[15]

The Johnny Eagle gun also differs extensively from plaintiff's patent in structure and operation. It contains a complicated combination compressing and trigger mechanism consisting of lever, hammer, bell crank, trigger, thumb hammer, thumb hammer torsion spring, hammer torsion spring, slide, and cocking lever.

15. See Trial Minutes, p. 139.

The gun may be operated in three different ways—by cocking it with the cocking lever, or with the thumb hammer, and pulling the trigger or by pulling the trigger without cocking it first. When the cocking lever is pushed down, a slide travels back over the thumb hammer, thereby causing it to rotate backwards. This rotation causes the trigger to move partially to the rear and a projection on the hammer to engage a projection on the trigger, thus locking both in place.[16] The rearward movement of the trigger engages a series of linkages [17] (bell crank, hammer, and lever) which partially depress the bellows. When the trigger is pulled, the bellows is depressed further and then released by action within the bell crank. If the trigger is pulled without cocking, the above-mentioned operation occurs in one continuous action, without any intermediate locking.

In view of the foregoing, the court finds that the compressing and trigger mechanisms of the Jungle Jack and Johnny Eagle guns differ significantly in their component parts and mode of operation from those in plaintiff's patent.

■ ■ Despite these differences the plaintiff contends that infringement may be found by applying the doctrine of equivalents. Under this doctrine, infringement results when one device does the same work in substantially the same way and accomplishes substantially the same result as another, although they may differ in name, form or shape. See Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935 (1878). The court concludes, however, that the applicable doctrine in this case is not the one of equivalents, but rather that of file wrapper estoppel which precludes a patentee from asserting his initial claims or their equivalents when those claims were rejected by the Patent Office and, as a result, were subsequently narrowed in order to secure acceptance. See Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 136, 62 S.Ct. 513, 86 L.Ed. 736 (1942).

A brief review of the file wrapper history indicates the applicability of estoppel in this case. On November 13, 1953, the plaintiff filed an original application for a patent. This application contained two broad claims for a toy gun.[18] On August 21, 1959, the Patent Office examiner rejected both claims on the basis of inadequate disclosure of the sound required to simulate a ricocheting bullet and on the prior disclosures of

---

16. The thumb hammer also may be cocked by pulling back on it until it engages with the trigger.

17. These linkages are very similar to those in the Jungle Jack gun.

18. Plaintiff's original application contained 26 claims, which he later restricted to two claims—5 and 6. These claims read as follows:

5. A toy gun having a sound producing mechanism simulating the noise of a bullet richocheting in flight, comprising a toy gun shaped with a barrel, hand grip or stock, and trigger release mechanism, a collapsable (sic) bellows comprising a flexible tubular section, a spring therein normally keeping said bellows expanded, a noisemaker situated at one end of said bellows, said noisemaker adapted to emit a high shrill note simulating the sound of a ricochetting bullet with the rapid movement of said bellows walls, means compressing said bellows and means associated with said trigger permitting said bellows to expand freely under the action of said spring therein.

6. A toy gun, having a barrel and stock, means therein producing a high pitch noise simulating a bullet ricochetting in flight, said means comprisng a collapasable (sic) bellows, one end of said bellows being secured to the interior of said toy, an opening in said bellows permitting air to flow therethru (sic) with the movement thereof, an air operated noisemaking device in said opening, and spring actuated means urging movement of the non-secured end of said bellows with the movement of said trigger with sufficient rapidity to cause air to rush thru said opening to produce said richochetting noise. Plaintiff's Exhibit 9, p. 23.

the art.[19] To overcome these objections, the plaintiff withdrew Claims 5 and 6 on February 23, 1960 and substituted Claim 28 (Claim 1 of the present patent). On May 26, 1960, he added by amendment Claim 29 (Claim 2 of the present patent). In July, 1960, the examiner found these two new claims allowable.

■ It is significant that the two claims thus allowed are considerably narrower in scope than those originally presented and rejected. In Claim 28, the plaintiff for the first time placed the bellows and compressing mechanism in particular locations. In Claims 28 and 29, he also narrowed the scope of his invention by using the compressing means to lock the bellows in a substantially collapsed condition. It appears that the plaintiff narrowed his claim in order to meet the examiner's objections as to prior art, i. e., to remove the ambiguity as to the placement, composition, and/or operation of the compressing mechanism.[20] Hence, the plaintiff is bound by the terms he used in his claims

and specifications to avoid the state of the prior art. See Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 221, 61 S.Ct. 235, 85 L.Ed. 132 (1940). Although the plaintiff had the right to appeal the examiner's rejection of his original claims,[21] he chose instead to accept a patent with narrower and more restricted claims. It is not appropriate either to speculate as to his reasons for doing so or to relieve him from the consequences thereof.[22] See Int'l Latex Corp. v. Warner Bros. Co., 276 F.2d 557, 565 (2d Cir.), cert. denied, 364 U.S. 816, 81 S.Ct. 47, 5 L.Ed.2d 47 (1960). The court therefore concludes that the defendants have not infringed plaintiff's patent.

■ In summarizing this opinion which represents the court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, the court concludes that plaintiff's patent is valid, but that it has not and is not being infringed by the defendants.[23] The summons and complaint are therefore hereby dismissed.

So ordered.

19. See Plaintiff's Exhibit 9, pp. 42–43.

20. The court notes the high degree of similarity between the operation of the toy gun in plaintiff's original patent application and the operation of the Rotfeld gun, which the examiner cited as part of his reason for rejection of the original application. See Plaintiff's Exhibit 9, p. 43; Rotfeld patent, Defendants' Exhibit K.

21. See 35 U.S.C. §§ 141, 145; Keith v. Charles E. Hires Co., 116 F.2d 46 (2d Cir. 1940).

22. "[I]f the claim to a combination be restricted to specified elements, all must be regarded as material, and * * * limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the

inventor and looked upon as disclaimers." I.T.S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 443–444, 47 S.Ct. 136, 141, 71 L.Ed. 335 (1926). See also Sterner Lighting, Inc. v. Allied Electrical Supply, Inc., 431 F.2d 539, 544 (5th Cir. 1970), petition for cert. filed, 39 U.S.L.W. 3201 (U. S. Nov. 2, 1970).

23. The defendants have requested an award of partial attorney's fees. Attorney's fees may be awarded only in exceptional circumstances. 35 U.S.C. § 285. And such an award generally is based upon a finding of bad faith on the part of the losing party. See Formal Fashions, Inc. v. Braiman Bows, Inc., 254 F.Supp. 389 (S.D.N.Y.1966), aff'd 369 F.2d 536 (2d Cir. 1966). See also Fleischman Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717–718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). The court finds no such bad faith here.

APPENDIX

Dec. 6, 1960      J. H. LEMELSON      2,962,837

TOY GUN CONTAINING RICOCHET NOISE MECHANISM

Original Filed Nov. 13, 1953

*Fig. 1*

*Fig. 2*

INVENTOR.

Jerome H. Lemelson

[A3528]