Jerome H. LEMELSON, Plaintiff-Appellant,

v.

TOPPER CORPORATION (by change of name from DeLuxe Reading Corporation) and The Great Atlantic and Pacific Tea Co., Inc., Defendants-Appellees and Cross-Appellants.

Nos. 28, 29, Dockets 71–1253, 71–1314.

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1971.

Decided Oct. 22, 1971.

Eliot S. Gerber, New York City (Wyatt, Gerber & Shoup and Arthur T. Fattibene, New York City, of counsel), for appellant.

David H. T. Kane, New York City (Kane, Dalsimer, Kane, Sullivan & Kurucz and Siegrun D. Kane and Gerald Levy, New York City, of counsel), for appellee Topper Corp.

Before MOORE, SMITH and HAYS, Circuit Judges.

MOORE, Circuit Judge:

Jerome H. Lemelson appeals from an order of the United States District Court for the Southern District of New York, dismissing his complaint for patent infringement.[1]    Topper Corporation[2] cross-appeals from that part of the court's order adjudging Lemelson's patent valid.

Lemelson was issued a patent on a toy gun containing a mechanism which simulates the sound of a ricocheting bullet through the use of a reed-like noisemaker which is activated by the sudden expansion of a spring-loaded bellows.[3]    Sometime after the issuance of the patent, defendant Topper Corporation (Topper) began manufacturing and marketing toy guns called the "Jungle Jack" and the "Johnny Eagle Red River" which allegedly infringe appellant's patent.   Codefendant The Great Atlantic and Pacific Tea Comany sells the "Jungle Jack."

■  After trial without a jury, the district court concluded that Lemelson's patent was valid but not infringed by the "Jungle Jack" or "Johnny Eagle Red River" guns.   While we affirm the court's dismissal of plaintiff's complaint, we do so for a different reason: we find that plantiff's patent is invalid for obviousness.[4]

The patent law confers on patentees the exclusive right to exploit their inventions in recognition of the fact that but for legal subsidization the quantity of technical innovation forthcoming would be less than optimal.[5]   The problem that has continually faced the Congress and the courts is how to develop legal standards that define the characteristics of those inventions and only those inventions that would not be forthcoming but for the inducement of a legal monopoly.[6]   The standards currently used are that to be patentable an invention must be useful, novel, and nonob-

1.  Lemelson v. DeLuxe Reading Corp., 321 F.Supp. 1281 (S.D.N.Y.1971).

2.  Subsequent to the decision below, DeLuxe Reading Corporation changed its name to Topper Corporation.

3.  Patent No. 2,962,837 (Dec. 6, 1960).

4.  Our disposition of the issue of the patent's validity renders unnecessary disposition of appellant's claim of infringement. Accordingly, we express no opinion on the district court's resolution of the issue of whether the doctrine of equivalents or the doctrine of file wrapper estoppel applies to the facts of this case.  See 321 F.Supp. at 1287–1288.

5.  See Baxter, Legal Restrictions on Exploitation of the Patent Monopoly: An Economic Analysis, 76 Yale L.J. 267, 267–75 (1966).

6.  See Graham v. John Deere Co., 383 U.S. 1, 5–12, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

vious.[7] In Graham v. John Deere Co.,[8] the Court set the guidelines to be used in applying the nonobvious standard of section 103:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.[9]

### Lemelson's Invention

Lemelson's invention consists of a mechanism whereby a ricochet sound is emitted upon the firing of a toy gun.[10] The essential constituents of this mechanism are (1) a bellows, (2) a spring-loaded device for compressing and holding compressed such bellows, (3) a mechanism connected to the trigger that causes the bellows to suddenly expand upon firing, and (4) a noise-making device consisting primarily of a reed. When the gun is cocked, an actuator compresses the bellows. Upon firing, the bellows rapidly expands, sucking in air that flows over the tubular reed type noisemaker. The end result is that the bellows upon expansion emits a sound that simulates the whine of a bullet ricocheting in flight.

### The Prior Art

The district court considered fourteen patents as constituting the prior art.[11] In making our finding of obviousness we rely on three of these: The Bocchino, Lawson, and Everett patents.[12] The Bocchino patent consists of a toy bellows with an expansion spring, intended to be used in connection with wind operated reeds in the production of sound.[13] The Lawson patent is a jack-in-the-box containing a spring actuated bellows with a reed that produces a sound upon expansion of the bellows when the top of the

7. Patent Act of 1952, §§ 101–03, 35 U.S.C. §§ 101–03 (1970). Section 103 provides, in relevant part:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * *"

8. 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

9. Id. at 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545.

10. Claim 2 of Lemelson's patent provides: "In the mechanical combination of a manually portable toy gun consisting of a shaped hand grip portion, a barrel portion, a trigger element for simulating the firing of a gun and sound producing mechanism located within the gun, the improvement which comprises:
"(a) a collapsible bellows device,
"(b) a spring loaded bellows compressing means for compressing said bellows and temporarily holding the bellows in a substantially collapsed condition,
"(c) means associated with said trigger element for releasing said spring loaded bellows compressing means and thereby causing the collapsed bellows to suddenly expand,
"(d) said collapsible bellows device being provided with a noise making device which is actuated when said bellows moves from a compressed to an expanded position,
"(e) whereby when said collapsible bellows is compressed under the action of said bellows compressing means and then subsequently the trigger element is caused to release said bellows compressing means, said collapsed bellows will suddenly expand and emit a sound which children can imagine and associate with the sound of a ricochetting bullet."
It is this claim that appellant contends is infringed by Topper's guns.

11. See 321 F.Supp. at 1283–1284. The Patent Office cited three patents, two of which the district court included in its survey of the prior art. Id. at 1284.

12. Patent Nos. 1,769,251 (July 1, 1930), 2,598,807 (Oct. 29, 1948), 2,561,849 (July 24, 1951).

13. Patent No. 1,769,251 (July 1, 1930).

box is released.[14] The Everett patent is a toy smoking gun, containing a bellows which is expanded upon the cocking of the hammer and collapses upon firing. The contraction of the bellows forces a small amount of powder to escape, thereby creating the illusion of a smoking weapon.[15] The Lawson patent was cited by the Patent Office as exemplifying the prior art; the Bocchino and Everett patents were not cited by the Office.

### The Obviousness of the Lemelson Invention

Mindful of the corrosive effect that time has on the nonobviousness of an invention, we nevertheless conclude that "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art * *."[16] In short, a person skilled in the mechanical arts and who desired to produce a gun which would emit a ricocheting sound could have found in the prior art ways, means, or suggestions as to how to do it. The use of a spring actuated, expanding bellows in conjunction with wind operated reeds to create sound was dis-

closed by the Bocchino and Lawson patents. The use of a trigger mechanism to actuate a bellows was suggested by the Everett patent. Lemelson's contribution was to devise a mechanism whereby a bellows is first contracted and then rapidly expanded to create the rush of air that, flowing over the tubular reed-type noisemaker, produced the ricochet sound. Even disregarding the stricter standard of nonobviousness applicable to combination patents,[17] we conclude that the invention of such a mechanism would have been obvious to someone having ordinary skill in the art of making toys.

■■ The question of patent validity is a question of law;[18] district court determinations of validity are not entitled to the weight on appeal accorded district court findings of fact.[19] Our disagreement with the court below on the issue of validity stems from our conclusion that that court did not apply the rather rigorous standard of nonobviousness mandated by section 103, Graham,[20] and Great Atlantic & Pacific.[21] There may have been novelty in the creation of Lemelson's gun, but novelty is not to be equated with nonobviousness.[22] The fact that the elements of various segments of the prior art had not been previously

14. See 321 F.Supp. at 1284.

15. Patent No. 2,561,849 (July 24, 1951).

16. Patent Act of 1952, § 103, 35 U.S.C. § 103 (1970).

17. See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U. S. 147, 152–153, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Continental Can Co. v. Old Dominion Box Co., 393 F.2d 321, 326 (2d Cir. 1968).

18. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 155, 71 S.Ct. 127, 95 L.Ed. 162 (1950) (concurring opinion); Gross v. JFD Manufacturing Co., 314 F.2d 196, 198 (2d Cir.), cert. denied, 374 U.S. 832, 83 S.Ct. 1873, 10 L.Ed.2d 1054 (1963).

19. See Fed.R.Civ.P. 52(a).

20. See 383 U.S. at 17–19, 86 S.Ct. 684, 15 L.Ed.2d 545.

21. See 340 U.S. at 151–153, 71 S.Ct. 127, 95 L.Ed. 162, and concurring opinion of Justice Douglas.

22. But see

"While the ordinary skill in the art at that time clearly was quite high, it is important to note that no one in the art had invented a gun that simulated the sound of a ricocheting bullet by the sudden expansion of a spring-loaded bellows prior to the time of plaintiff's invention. * * * The plaintiff's patent demonstrates such originality by using the old elements in a particular combination previously unknown to the prior art. The invention combines for the first time a spring actuated bellows, a reed-like noisemaker, a compressing system, and a trigger mechanism."

321 F.Supp. at 1284–1285 (footnote omitted). Cf. Graham v. John Deere Co., 383 U.S. 1, 14–15, 86 S.Ct. 684, 15 L. Ed.2d 545 (1966).

combined to produce a ricocheting sound does not mean that a person skilled in the toy-making art created a patentable invention by his combination.

We recognize that there is a presumption, which is rebuttable, in favor of the Lemelson patent, and that the burden of establishing the invalidity of the patent is on Topper.[23] However, it has long been recognized that "the most that can be said of the presumption is that it requires that reasonable doubt on the question of validity be resolved in favor of the patent holder."[24] Such a doubt we do not have. Moreover, the volume of patent applications processed by the Patent Office, and the *ex parte* nature of their proceedings undermine the weight of the statutory presumption.[25] Finally, the failure of the Patent Office to actually cite patents that comprise, in part, the prior art

further undercuts the weight of the presumption.[26]

As a further ground for upholding the validity of Lemelson's patent, the district court relied on United States v. Adams[27] in finding that the Lemelson invention overcame disadvantages in the prior art that discouraged the search for the ricochet sound mechanism.[28] We believe this reliance was misplaced. The Christopher patent simulates the sound of a ricocheting bullet either by a sound-amplifier mounted near a recording disc and needle or by a lug on a revolving disc which strikes a sound-making comb and then a tuning fork.[29] There is no indication whatsoever as to how this patent established factors known to those skilled in the art that would deter the conception of the invention at issue here. In *Adams* such deterring factors were substantial and were well known to those skilled in the art.[30] In the absence of such evi-

---

23. Patent Act of 1952, § 282, 35 U.S.C. § 282 (1970).

24. Lorenz v. F. W. Woolworth Co., 305 F.2d 102, 105 (2d Cir. 1962) ; Rains v. Niaqua, Inc., 406 F.2d 275, 278 (2d Cir.), cert. denied, 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969).

25. *See* Graham v. John Deere Co., 383 U.S. 1, 18–19, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) ; Lorenz v. F. W. Woolworth Co., 305 F.2d 102, 105 (2d Cir. 1962).

26. *See, e. g.,* Reeves Brothers, Inc. v. United States Laminating Corp., 417 F.2d 869, 872 (2d Cir. 1969) ; Continental Can Co. v. Old Dominion Box Co., 393 F.2d 321, 326 n. 8 (2d Cir. 1968) ; Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536, 539 (2d Cir. 1966). It is true that there is testimony in the instant case that the Patent Office must have considered the Everett and Bocchino patents since these patents were in the classes that the examiner did search. Transcript at 277–80. In a close case we would not ignore the statutory presumption of validity solely on the basis that the examiner considered but did not cite the relevant prior art. However, where there is substantial evidence to rebut the statutory presumption, as in the instant case, the failure of the examiner to actually cite the relevant prior art does have cumulative value.

27. 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

28. 321 F.Supp. at 1285. In *Adams* the Court found nonobvious the invention of a nonrechargeable electrical battery. The battery operated on an open circuit, became heated in normal use, and was water activated. In finding the invention nonobvious, the Court relied upon, *inter alia*, the following two factors : (1) a person reasonably skilled in the art would have believed that a battery which continued to operate on an open circuit and which heated in normal use was not practical [Adams' battery was practical] ; and (2) a person reasonably skilled in the art would have believed that water-activated batteries were successful only when combined with non-magnesium electrolytes [one of the electrolytes in Adams' battery contained magnesium]. 383 U.S. at 51–52, 86 S.Ct. 684, 15 L.Ed.2d 545. *See also* Shaw v. E.B. & A.C. Whiting Co., 417 F.2d 1097, 1104 (2d Cir. 1969), cert. denied, 397 U.S. 1076, 90 S.Ct. 1518, 25 L.Ed.2d 811 (1970) (Justices Black, Douglas, and White dissenting).

29. Patent No. 2,734,810 (Feb. 14, 1956).

30. *See* note 28 *supra*.
   "These *long-accepted factors* [the factors referred to in note 28], when taken together, would, we believe, deter any

dence, reliance on the *Adams* path through the nonobvious test must fail.

Judgment dismissing the complaint is affirmed; the finding of patent validity is reversed.

investigation into such a combination as is used by Adams. This is not to say that one who merely finds new uses for old inventions by shutting his eyes to their prior disadvantages thereby discovers a patentable innovation. We do say, however, that *known disadvantages in old devices which would naturally discourage the search for new inventions* may be taken into account in determining obviousness." 383 U.S. at 52, 86 S.Ct. at 714, 15 L.Ed.2d 572 (emphasis added).