**Otto HÜBNER, Plaintiff,**

v.

**SUNBEAM CORPORATION, Defendant.**

**No. 64 Civ. 2866.**

United States District Court,
S. D. New York.

Sept. 24, 1970.

Goldfarb & Chalson, New York City (Kenneth S. Goldfarb, New York City, of counsel), for plaintiff.

Gilbert, Segall & Young, New York City, and Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill. (Walther E. Wyss, George R. Clark, Neil M. Rose and Philip M. Kolehmainen, Chicago, Ill., Robert Layton, New York City, of counsel), for defendant.

MEMORANDUM

MURPHY, District Judge.

This is an action for patent infringement.

The patent, No. 3,027,507, granted to the plaintiff on March 27, 1962, is entitled "Power Pact Means for Electrical Appliance." The application was filed in the U. S. Patent Office on January 9, 1957.

It has been stipulated that plaintiff, a citizen of Germany, is the owner of the patent and has the right to sue thereon, and that defendant was until recently an Illinois corporation and between January 1963 and September 1965 manufactured and sold throughout the United States "cordless" battery powered electric razors or shavers Models 711, 711–I or 711–II. These are the accused structures.

At the opening of trial plaintiff limited himself on the issue of infringement to Claims 1 and 7 of the Hübner patent and to the date of January 9, 1957 (the filing date) as the earliest date of the alleged invention.

The pretrial order limited the issues, as modified by plaintiff's opening statement, as follows:

1. Have Claims 1 and 7 of the Hübner patent No. 3,027,507 valid?

2. Have Claims 1 and 7 of the Hübner patent been infringed by the manufacture and sale between January 1963 and September 1965 of Sunbeam's electric shaver, Models 711, 711–I or 711–II?

Although the Hübner patent Claims 1 and 7 fail to mention electric razors or shavers, the specifications and drawings clearly do. In fact, the opening paragraph of the patent reads:

"This invention relates to improvements in electric shavers, and more particularly to a battery-operated electric shaver having means for permitting the battery to be charged from line current."

So for our own purposes it is fair to say that the devices disclosed in the Hübner patent and the accused structures are in fact portable electric razors or shavers employing rechargeable batteries as a source of power although the Claims apply to *any* portable electrical appliance.

Claims 1 and 7 of Hübner read as follows:

"1. Power pack means for supplying current to a portable electrical appliance having a housing, comprising a low-voltage drive motor in the upper portion of said housing, gas-tight storage-battery cells mounted in said housing beneath said motor, a control switch mounted on said housing and connecting said cells with said motor, a pair of connector members mounted on said housing for plug-in connection with an alternating-current utility-line outlet, a rectifier fixedly mounted in said housing and having output leads connected to said cells, impedance means comprising a capacitor, and a voltage divider circuit connected between said connector memberes [sic] to be energized by full power-line voltage and comprising said rectifier and said impedance means inclusive of said capacitor in direct and fixed series connection with each other and fixedly mounted in said housing, whereby said cells are chargeable through said voltage divider circuit from different line voltages."

"7. Power pack means for supplying current to a portable electrical appliance having a housing, comprising a low-voltage direct-current motor mounted in the upper portion of said housing, a pile of series connected gas-tight storage cells having a total direct-current voltage adapted to that of said motor, a control switch connecting said cells with said motor, a pair of connector members mounted on said housing for plug-in connection with an alternating-current utility-line outlet, a full-wave rectifier mounted in said housing and having output leads connected to said cells, a line-voltage divider circuit connected in said housing between said two connector members to be impressed by full line voltage and consisting essentially of a resistor and a current-limiting capacitor connected directly in series with said rectifier, said voltage divider being rated for charging said cells from respectively different line voltages."

On the issue of validity, it is defendant's submission that the two Claims (1 and 7) of Hübner were anticipated or

were obvious by the Witte patent No. 2,880,306 filed in the United States on March 1, 1956. It is not disputed that the filing date of the U. S. Witte patent (nine months before the Hübner filing) is the controlling date under 35 U.S.C. § 102(e) [1] for "patent defeating" prior art. Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 255, 256, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965); Reeves Brothers, Inc. v. U. S. Laminating Corp., 417 F.2d 869, 871 (2d Cir. 1969).

The Witte invention relates "to low power consuming electrical appliances with chargeable built in storage battery arrangement and is particularly concerned with electrical appliances of the kind referred to which frequently are used in locations in which no suitable source of electric power is present, that is for example flash lights, electric razors, flash devices for photographic purposes and the like appliances."

Witte describes and illustrates a flashlight with a bulb energized from a storage cell which is chargeable from a utility line outlet by a charging device built into the housing of the flashlight and connected between two plug pins. In Witte's flashlight the lamp bulb is connected to the storage cell through a switch in much the same manner as the shaver motor is connected to the storage battery in Hübner. A network of circuits connect the plug pins with the storage cell and is composed of resistors, a capacitor and rectifier. The principal difference between Hübner and Witte is that Hübner has a full-wave rectifier whose output leads are connected to a pile of series connected gas-tight storage cells, and Witte discloses no gas-tight storage cells and no pile of series connected cells but only a half-wave rectifier.

We doubt whether Witte satisfies the anticipation rule since not all of the elements of Hübner's Claims 1 and 7 or their equivalents can be found in Witte. Firestone v. Aluminum Co. of America, 285 F.2d 928, 930 (6th Cir. 1960). But anticipation still can be had under 35 U.S.C. § 102 even though all of the elements are not found in a single prior device. In Amphenol Corp. v. General Time Corp., 397 F.2d 431, 438 (7th Cir. 1968), it was stated:

"As a rule, in order to have anticipation, all of the elements of the patented device or their equivalents must be found in a single prior device. Firestone v. Aluminum Co. of America, 6 Cir., 1960, 285 F.2d 928, 930; Allied Wheel Products v. Rude, 6 Cir., 1953, 206 F.2d 752, 760. But it is sufficient if the general aspects are the same and the difference in minor matters is only such as would suggest itself to one of ordinary skill in the art. 1 Walker on Patents (Deller, 2d ed.) § 77 at page 363, citing Model Bottling Machinery Co. v. Anheuser-Busch Brewing Assn., 8 Cir., 1911, 190 F. 573, 579, cert. den. 223 U.S. 732, 32 S. Ct. 528, 56 L.Ed. 634."

See, too, Deep Welding, Inc. v. Sciaky Brothers, Inc., 417 F.2d 1227, 1234 (7th Cir. 1969), and 35 U.S.C. § 103.[2]

Accordingly, defendant argues, and we think correctly, that the general aspects are the same and the differences in minor matters are only such as would suggest themselves to one of ordinary skill in the art. For example, Claim 1 of Hübner does not require a full-wave rectifier, but Claim 7 does. But the prior

1. "A person shall be entitled to a patent unless—

\* \* \* \* \*

"(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent \* \* \*."

2. "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made." 35 U.S.C. § 103.

art teaches, and plaintiff's expert admitted, that it is well known to use either a full-wave rectifier or a half-wave rectifier. In the Ermecke German Patent No. 631,992 of 1936 (one of the prior patents), it is stated:

"The half-wave rectifier described is comparatively uneconomical in operation. Figure 2 shows a full-wave rectifier having a capacitor for limiting current which delivers twice the direct current if the capacity of the condenser remains the same. The manner of operation is substantially the same as in half-wave rectification, the only difference being that by using 4 transistors in the known bridge circuit both half waves of the alternating current flow through the direct current load."

In addition, Witte clearly states that his device could be used either for a lamp or a motor for a razor. Both experts agreed that an electric bulb and an electric motor are equivalents.

This analysis is the same as that made by the patent Examiner when Claims 18 and 19 (now 1 and 7) were rejected. The Examiner stated that "[these claims] are rejected as unpatentable over Zach, cited, in view of Witte, cited, or vice versa. To use the charging circuit of Witte in the razor of Zach, or to use the motor and shaving head as the load [in] the Witte device would be a mere expedient to one skilled in the art." Thereafter plaintiff, pursuant to Rule 55 of the Rules of Practice (1955–60) of the Patent Office, filed a sworn translation and a translator's affidavit of plaintiff's German patent application dated January 10, 1956, "to overcome the dates of the Zach and Witte references." Thereafter the file wrapper indicates no further references by the Examiner to those patents.

■ We agree with defendant's argument that obviously the Examiner was misled into the belief that such patents (Witte and Zach) were not early enough to be prior art, and had the plaintiff told the Examiner that he relied only on

his U. S. filing date of January 9, 1957, Claims 1 and 7 would never have been granted. Thus, under these circumstances the Hübner patent is entitled to no presumption of validity as authorized by 35 U.S.C. § 282. See Reeves Brothers, Inc. v. U. S. Laminating Corp., *supra*, 417 F.2d at 872, 877; Audio Devices, Inc. v. Armour Research Foundation of Illinois Institute of Technology, 293 F.2d 102, 107 (2d Cir. 1961).

In 35 U.S.C. § 103 the issuance of a patent is proscribed if the claim, as a whole, would have been obvious at the time of invention to a person having ordinary skill in the art to which the claim pertains. In order to determine this issue, *i.e.*, obviousness or nonobviousness, the Supreme Court, in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), has stated:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined."

The scope and content of the prior art was collected and received in evidence as Defendant's Exhibit B and explained by its expert. Fortunately for the Court, plaintiff's counsel and his expert frankly admitted that every element of the Claims in suit was old and well known.

For example, electric motors operated by batteries for use in electric shavers and other appliances were old and well known; recharging circuits for battery-operated appliances built into the housing or casing of the appliance were old and well known; voltage divider circuits comprising resistors, inductors or capacitors were used in electric razors and other appliances and were old and well known.

The only evidence in this case relating to the level of ordinary skill in the electric shaver art just prior to 1957 was that submitted by the defendant. The

sum total of this evidence convinces us that the level was that of people who had engineering or science degrees and had several years' experience in the electric shaver field. In short, the level of ordinary skill in the art was unusually high.

Since plaintiff's Claims 1 and 7 are directed to an assembly of mechanical elements each of which was old and well known, they must be scrutinized very carefully. We were told by the Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950), that:

> "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements."

and:

> "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics. This case is wanting in any unusual or surprising consequences from the unification of the elements here concerned, and there is nothing to indicate that the lower courts scrutinized the claims in the light of this rather severe test."

Also, we were reminded in Graham v. John Deere Co., *supra*, that "strict observance" of standards of 35 U.S.C. § 103 is necessary.

Most recently the Supreme Court, in Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969), struck down a combination patent, saying:

> "A combination of elements may result in an effect greater than the sum of the several effects taken separately. No such synergistic result is argued here. It is, however, fervently argued that the combination filled a long felt want and has enjoyed commercial success. But those matters 'without invention will not make patentability.' A. & P. Tea Co. v. Supermarket Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162."

We applied the severe test and conclude that the old elements combined by plaintiff do not "result in an effect greater than the sum of the several effects taken separately." All of the old elements function exactly the same—whether they are inside or outside the shaver housing. In doing so we reject the opinion of plaintiff's expert who testified that the combination of the old elements gave an effect greater than the sum of the several effects of the individual elements. It was his opinion that the Hübner patent was able to furnish a much bigger power and could be recharged by using 110 volt or 220 volt AC source, the 220 volt source charging much faster. This is also true, however, of Witte and the Accu Lux device built according to its teaching. But more important is the absence in the Hübner specifications, the claims or file wrapper of the "advantage" of "much bigger power." Cf. Tinnerman Products, Inc. v. George K. Garrett Co., 292 F.2d 137 (3d Cir. 1961). In fact, neither Claim 1 nor 7 reveals a requirement for any kind of power.

We conclude, in the words of *Black Rock,* "that to those skilled in the art the use of the old elements in combination was not an invention by the obvious-nonobvious standard." 396 U.S. at 62–63, 90 S.Ct. at 309.

The Hübner patent is invalid, and we have, therefore, no need to consider the issue of infringement.

Let this Memorandum stand for our findings of fact and conclusions of law.

Settle decree.