**KEN WIRE & METAL PRODUCTS, INC., Plaintiff,**

v.

**COLUMBIA BROADCASTING SYS-TEMS, INC., Defendant.**

**No. 69 Civ. 2582.**

United States District Court, S. D. New York. Nov. 23, 1971.

Hoffberg, Margolies & Ginsberg, New York City, for plaintiff; Irving Margolies, New York City, of counsel.

Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, for defendant; Gerald Walpin, New York City, of counsel.

TENNEY, District Judge.

This is a motion by defendant Columbia Broadcasting Systems, Inc. (hereinafter referred to as "Columbia") to amend its answer pursuant to Fed.R. Civ.P. 15(a) and for summary judgment pursuant to Fed.R.Civ.P. 56(b).

Plaintiff, Ken Wire & Metal Products, Inc. (hereinafter referred to as "Ken Wire") is a New York corporation engaged in the business of designing, fabricating and selling wire and metal products. Defendant is also a New York

corporation and operates the Columbia Record Club which sells phonograph records to members of the club and, in the course of its business, offers premiums to new club members.

In May 1965, Richard S. Halstead, a vice-president of Ken Wire, met with Burt Wigod, the Columbia representative in charge of purchasing premiums for the record club. Wigod requested Ken Wire to design a record rack to be used as a club premium and indicated that if plaintiff were able to come up with an acceptable design Columbia would give Ken Wire an order for its entire first-year requirements. Three days later, Halstead delivered a "Browser Record Rack" to Wigod who was apparently quite pleased with the design and promised to be in touch with plaintiff when Columbia was ready to test the rack. After a few months passed and plaintiff had not received an order from Columbia for the rack, Mortimer M. Lerner, president of Ken Wire became suspicious, and in November 1965, upon learning that Columbia had ordered the rack from another manufacturer, called defendant and was informed that Robert Bellin would represent Columbia in any further negotiations. Mr. Bellin confirmed to Lerner that Columbia had ordered the rack from another manufacturer but was still willing to place an order with Ken Wire, assuming a satisfactory rack could be submitted. Ken Wire then manufactured a small order of racks so that defendant could test them but did not create permanent dies for the rack since it still did not have any large orders. The small order of racks was delivered to defendant, and

again a period of months passed during which plaintiff did not hear from Columbia. Upon inquiring of defendant in May 1966, Lerner was informed that Columbia would take 100,000 racks from Ken Wire. That offer was rejected by Lerner, and Bellin denied having promised to place a larger order. Subsequently, on March 7, 1967, Halstead was granted a patent (#3,307,708) on the rack he had designed for Columbia. Halstead, who filed for the patent on November 4, 1965, had previously assigned all rights in the patent to Ken Wire. On March 27, 1967, Ken Wire again offered to produce the "Browser Record Rack" for Columbia at specified prices. When that offer was rejected by Columbia, Ken Wire initiated this suit for breach of contract and patent infringement.

Defendant now moves this Court to allow it to amend its answer to include the defenses of the statute of frauds as to the contract action and of laches and estoppel as to the infringement action.

Plaintiff opposes the motion to add the defense of the statute of frauds apparently on the grounds it is insufficient as a matter of law. Plaintiff argues that since the contract in question could possibly have been performed within one year it is taken out of the statute of frauds. N.Y. Gen'l Obligations Law § 5–701 (McKinney's Consol.Laws c. 24A 1964).[1] Plaintiff further argues that the contract did not involve a sale of goods and the racks in question were specially manufactured for Columbia, and thus the contract is not rendered unenforceable by N.Y. Uniform Commercial Code § 2–201 (Mc-

---

1. N.Y. Gen'l Obligations La w§ 5–701 (McKinney 1964) provides:

"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms is not to be performed within one year from the making

thereof or the performance of which is not to be completed before the end of a lifetime."

The law is clear, however, that the statute does not apply to contracts which are capable of being performed within one year. North Shore Bottling Co. v. C. Schmidt and Sons, Inc., 22 N.Y.2d 171, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968).

Kinney 1964).[2] Defendant, of course, vigorously disputes plaintiff's contentions, and it appears that there are several factual issue that are not free from doubt and must await a trial: what were the terms of the agreement; whether that agreement could possibly have been performed within one year;[3] whether the contract involved a sale of goods; and if the contract did involve a sale of goods, whether they were specially manufactured for Columbia, whether they were suitable for sale to others in the ordinary course of Ken Wire's business, and whether plaintiff had made a substantial beginning in the manufacture of the racks.

These factual issues preclude the Court from determining that as a matter of law the defense of the statute of frauds is frivolous and, therefore, the interests of justice require that defendant be permitted to add the statute of frauds as a defense to the contract action, especially since the amendment works no prejudice to the plaintiff and since defendant did not learn of the grounds for such an amendment until the completion of its discovery. Columbia has also moved for summary judgment on the contract action, but obviously these same factual issues prevent the Court from granting this motion for summary judgment.

■■■■ There are, however, no material factual issues precluding the granting of summary judgment on the infringement action since this Court has concluded as a matter of law that the Halstead patent is invalid for obviousness. *See,* 35 U.S.C. § 103 (1971).[4] The test to be applied in determining whether the patented item would have been obvious to a person of ordinary skill in the art was outlined by the Supreme Court in Graham .v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed. 2d 545 (1966). This Court must determine the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of

2. N.Y. Uniform Commercial Code § 2–201 (McKinney 1964) provides:

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker . . . ."

. . . . .

"(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller . . . has made . . a substantial beginning of their manufacture . . . ."

3. This Court is inclined to agree with plaintiff's contention that the contract could have been performed within a year since it is possible that plaintiff could have designed an acceptable rack, defendant have tested it, and defendant have ordered its requirements for the year based on projected need, and all of this could have taken place within a year. In fact, it appears Halstead designed the rack in only three days and by November 1965, only five months later, Columbia had placed substantial orders with other manufacturers. It is possible, however, that by the terms of the agreement, which, as indicated, are not clearly specified, the agreement could not have been performed within a year if, as defendant claims, it could not have placed its entire order until the end of the first year. In any event, allowing defendant to amend its answer to include the defense of the statute of frauds does not prejudice plaintiff, and the Court in the exercise of its discretion and in the interests of justice will allow the amendment. It is abundantly clear, however, that as the facts now appear summary judgment cannot be granted to defendant on the contract action, since there is a strong likelihood that the agreement is taken out of N.Y. Gen'l Obligations Law § 5–701 (McKinney 1964).

4. 35 U.S.C. § 103 (1971) provides:

"A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

ordinary skill in the industry. Against this background, the Court is to determine the obviousness of the patented object. In cases such as this, however, where the patented device is quite simple and very easily understood, the Court does not need expert testimony in order to make the necessary findings, and summary judgment is an appropriate form of relief. C-Thru Products, Inc. v. Uniflex, Inc., 397 F.2d 952, 955 (2d Cir. 1968); Monaplastics, Inc. v. Caldor, Inc., 378 F. 2d 20, 21 (2d Cir. 1967).

Defendant has cited five patents as the prior art in arguing that the Halstead patent is invalid for obviousness. This Court, however, has relied on only two of them in reaching its determination: the Irwin patent, #2,212,207, which was granted on August 20, 1940, and the Sankey patent, #3,251,504, which was granted on May 17, 1966. Of the two, only the Irwin patent was considered by the Patent Examiner in granting the Halstead patent.

The Sankey patent is described in its claim as:

"[a] collapsible carrier . . . comprising two substantially rectangularly shaped frame members having generally parallel opposed end portions, complementary flattened areas formed in said end portions, rivet means extending through openings in said flattened areas pivotally joining the end portions of one member to the end portions of the other member . . ."

\* \* \* \* \* \*

" . . . [the] side portions which are below the pivot means being substantially straight and the opposite sides being of a scallopped configuration. . . ."

The Irwin patent is described in its claim as:

"A . . . rack comprising two substantially identical skeleton frames, each including a pair of end members arranged with the end members of one frame crossing the end members of the other frame. . . ."

"A. . . . rack with grids on the upper portions of said frames."

Against this background of prior art, this Court must determine whether the Halstead patent would have been obvious to a person of ordinary skill in the industry. The Halstead patent as described in its claim comprises:

"[O]nly a pair of interpivoted [wire] frames, each having a bottom portion and a top portion, and a pair of outwardly and upwardly inclined side portions, the inclined portions of one frame crossing the inclined portions of the other frame, and means pivoting said crossing portions."

" . . . whereby said top portions are longer than said bottom portions."

" . . . the top portions of both said frames being disposed parallel to each other."

" . . . the bottom portions of both said frames being disposed parallel to each other."

" . . . [and] said top portions and said bottom portions being disposed in parallel planes."

Although it may be difficult to visualize the Halstead patent from the above description, it consists merely of two trapezoidal wire frames being joined together at points on their sides to form a rack that can be used to stand flat objects such as envelopes or record albums on end. The use of a trapezoid with the longer end up rather than a rectangle permits the user to flip through the records or envelopes and read their covers without removing them from the rack. The Sankey rack described above is a similar rack using rectangular frames with scalloped tops plus the addition of two other wire portions, one of which serves as a handle for the rack and the other prevents the tumblers for which the rack was designed from falling out.

The Irwin rack also consists of two similarly shaped wire frames, although not necessarily rectangular, across the top portions of which are grids running parallel to the bottom and top of the frame; the Irwin rack was designed primarily to serve as a roasting rack for meats.

The differences between the Halstead patent and the Sankey and Irwin patents are insignificant and make it quite clear that the Halstead patent is invalid for obviousness. In the view of this Court, any person of ordinary intelligence and mechanical skill who wanted to design a rack that would hold flat objects, such as record albums, would have easily found the ways, means or suggestions for doing so in the Sankey patent.[5] Certainly it would have been obvious that to design a rack to hold record albums rather than glasses, one needed only to straighten the scalloped portion of the frame and eliminate the portion used to separate the glasses. The only act of Halstead that could even be considered as clever, though hardly inventive, is the use of a trapezoid rather than a rectangle in order to permit the user to flip through the record albums without removing them from the rack.

The chief difference between the Irwin rack and the Halstead rack appears to be merely the elimination of the grids on the upper portion of the Irwin rack and again the use of a trapezoid rather than a rectangle. In both instances the changes made are simple, easily understood and are mere mechanical variations on a common design which would have been obvious to any person of ordinary skill in the industry.

Aware that in attempting to determine the obviousness of a patent based on the nature of the prior art it is often difficult to avoid using some of the teachings of the patent in issue,[6] the Court nevertheless concludes that the Halstead patent is invalid for obviousness, especially when it is considered in light of the strict standard to be applied to combination patents.[7] Even if the prior art did not embody in every detail the Halstead patent, it still must be viewed as invalid for obviousness since all of the essential elements of the Halstead patent were anticipated by the Irwin and Sankey patents and Euclidian geometry.[8]

To be honest, this Court is rather amazed to find that a patent as flimsy and as spurious as this one has been granted by the Patent Office. Clearly, the Patent Office is still not applying the strict constitutional standard required in all patent cases. *See* Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), since under no circumstances could the Patent Office have found that the granting to

5. Lemelson v. Topper Corp., 450 F.2d 845, 848 (2d Cir. 1971).

6. Lemelson v. Topper Corp., *supra*, 450 F.2d at 848; Shaw v. E. B. & A. C. Whiting Co., 417 F.2d 1097, 1105 (2d Cir. 1969).

7. Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Hubner v. Sunbeam Corp., 320 F.Supp. 298, 302 (S.D.N.Y.1970), aff'd per curiam, 450 F.2d 878 (2d Cir. decided November 12, 1971).

"The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sums of its parts is the accumulation of old devices patentable. Elements may, of course, . . . take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics. This case is wanting in any unusual or surprising consequences from the unification of the elements here concerned . . . . " Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. at 152, 71 S.Ct. at 130.

8. G. B. Lewis Co. v. Gould Products, Inc., 436 F.2d 1176, 1179 (2d Cir. 1971).

Mr. Halstead of a patent on two wire trapezoidal frames joined together to form a rack to hold record albums promoted the progress of science and the useful arts as commanded by Article I § 8 of the Constitution.[9]

Finally, with regard to the rebuttable presumption of validity to be accorded the Halstead patent, "the most that can be said of the presumption is that it requires that reasonable doubt on the question of validity be resolved in favor of the patent holder." Lemelson v. Topper Corp., 450 F.2d at 849 (2d Cir. decided October 22, 1971) quoting Lorenz v. F. W. Woolworth Co., 305 F.2d 102, 105 (2d Cir. 1962). This Court has no such doubt. Moreover, since the Patent Office did not consider the Sankey patent, which constitutes a significant part of the prior art in evaluating the Halstead application, the presumption is undercut; the volume of patent applications processed by the Patent Office and the ex parte nature of the proceedings further undermines any presumption given the Halstead patent. Lemelson, *supra*, 450 F.2d at 849.

Therefore, this Court concludes as a matter of law that the Halstead patent is invalid for obviousness, and grants defendant's motion for summary judgment on the infringement cause of action.

Accordingly, defendant's motion for summary judgment is granted as to the infringement action and denied as to the contract action, and leave to amend the answer to include the defense of the statute of frauds is granted.[10]

So ordered.

---

9. "The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. at 152–153, 71 S.Ct. at 130.

10. In light of this Court's ruling on the infringement action, defendant's motion to amend its answer to include the defenses of laches and estoppel is now moot and is thus denied.