**ALBUM GRAPHICS, INC., Plaintiff,**

v.

**IVY HILL LITHOGRAPH CORP.,**
**Defendant.**

**No. 71 Civ. 2816.**

United States District Court,
S. D. New York.

Dec. 12, 1973.

Ostrolenk, Faber, Gerb & Soffen, New York City (Marvin C. Soffen and Edward A. Meilman, New York City, of counsel) and Stone, Wagner & Aubel, Chicago, Ill. (Wilfred S. Stone, Chicago, Ill., of counsel) for plaintiff.

Darby & Darby, New York City (Michael J. Sweedler, New York City, of counsel) for defendant.

BAUMAN, District Judge.

This is an action for patent infringement brought pursuant to 35 U.S.C. §§ 271 and 281, and for unfair competition. The defendant has now moved for summary judgment pursuant to Rule 56 of the Federal Rules, alleging that plaintiff's patent is invalid under 35 U.S.C. § 103.[1] For the reasons that follow, I find the patent to be invalid and the motion is thus granted to that extent.

Plaintiff, Album Graphics, Inc., is the assignee of U.S. Patent No. 3,556,391, issued on January 19, 1971 to one Donald W. Kosterka and entitled "Phonograph Record Album Package." Defendant, Ivy Hill Lithograph Corp., is a New York corporation which manufactures various paper products, including record jackets.[2] In its complaint, Album Graphics has accused Ivy Hill of manufacturing various record jackets which infringe its patent. Ivy Hill has now moved for summary judgment and alleges in essence that the Kosterka patent is invalid as "obvious" in view of the state of the prior art at the time it was granted. Ivy Hill points in particular to U.S. Patent No. 3,426,960, issued on February 11, 1969 to one Paul B. Shore and entitled "Phonograph Record Receiving Jacket." Defendant argues that the Shore patent foreshadowed all of the

innovations to which the Kosterka patent lays claim, and that the latter thus falls under the test of obviousness enunciated in 35 U.S.C. § 103.

I.

At the threshold there is a dispute concerning the propriety of summary judgment in patent infringement actions. The question has been considered by our Court of Appeals on several occasions. In Monaplastics, Inc. v. Caldor, Inc., 378 F.2d 20 (2nd Cir. 1967), the district court declared invalid under § 103 a patent for a "unitary paper toweling rack." On appeal, the plaintiff argued that summary judgment was inappropriate, and the Court of Appeals responded as follows:

"Appellant suggests that the summary judgment motion should not have been granted without the taking of testimony from experts in the pertinent area of knowledge. We agree, however, with the court below that [plaintiff's invention] would have been obvious to persons having ordinary skill in the plastics molding industry, and would even have been obvious to ordinary laymen of modest intelligence. Under these circumstances the court had no need for expert testimony in order to examine the nature of the prior art or the level of skill in the relevant industry. Therefore summary judgment was properly granted."

Also pertinent is the court's response to a similar objection in G. B. Lewis Company v. Gould Products, Inc., 436 F. 2d 1176 (2nd Cir. 1971): "These assertions would have more force if we were

---

1. 35 U.S.C. § 103:

"Conditions for patentability; non-obvious subject matter.

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

2. Ivy Hill does not design the record jackets which it manufactures. The jackets are designed by record companies and their brokers, who solicit bids from manufacturers on finished designs.

dealing with a complex technical achievement whose inventive characteristics would only rarely be susceptible of accurate judicial appreciation without the elucidation that expert testimony presumably provides." See also Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 233 F.2d 9 (2nd Cir.), cert. denied, 352 U.S. 917, 77 S.Ct. 216, 1 L. Ed.2d 123 (1956); C–Thru Products, Inc. v. Uniflex, Inc., 397 F.2d 952 (2nd Cir. 1968); Ken Wire & Metal Products, Inc. v. Columbia Broadcasting Systems, Inc., 338 F.Supp. 624 (S.D.N.Y. 1971), affd. 464 F.2d 1393 (2nd Cir. 1972).

I am, of course, aware of Judge Mansfield's *caveat* in Xerox Corp. v. Dennison Manufacturing Company, 322 F. Supp. 963 (S.D.N.Y.1971), wherein he states that "unusual caution" must be exercised before summary judgment is granted in a patent infringement case and notes the infrequency of success of such motions in this district. (At footnote 3 of his opinion, 322 F.Supp. at 967, he collects a formidable number of instances in which summary judgment was denied, and the reader is referred there if an enumeration is desired.)

 Generalized formulations are of little use in such cases however, and the propriety of summary judgment ultimately turns on the complexity of the patent in question and the degree to which its intricacies are accessible to the trial judge unaided by experts. In the instant case the patent could hardly be less complex; indeed it rivals in simplicity any of those involved in the

above cited cases where summary judgment was upheld by the Court of Appeals.[3] Nor is there any claim by the plaintiff here that expert testimony is necessary to elucidate its patent; it relies solely on Judge Mansfield's language in *Xerox*, conveniently ignoring the vast gulf that separates patents relating to electrophotographic copying machines and those covering record ablums.

## II.

The definitive construction of 35 U.S. C. § 103 can be found in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Obviousness, the Court stated, must be determined by "several basic factual inquiries," which it proceeded to set forth: "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." There are no genuine issues of fact material to any of these issues in this case; accordingly, I deem summary judgment appropriate and reach the merits.

The Kosterka patent is succinctly described by its inventor as "a phonograph record album package made from a blank of sheet material formed to provide at least six printable surfaces and an integral record-receiving pocket." The first claim, which appears to describe characteristics common to all of the claims of the patent (and was thus termed "generic" by the patent examiner) is set out in full in the margin.[4] By

---

3. In *Vermont Slate*, the patent covered a platform used for the transportation of slate slabs from a quarry; that in *C-Thru Products* covered bag handles; that in *G. B. Lewis* covered plastics bins; and in *Ken Wire* the patent covered wire racks for photograph records.

4. "1. A record album formed from a unitary blank sheet of material for receiving at least one phonograph record disc in a pocket formed therein comprising a plurality of panels, fold means along selected

edges of said panels for enabling the folding of said panels into an album package having at least six readily visible surfaces on which intelligence matter may be carried comprising at least four panels, each panel being integrally joined to another panel along a single side edge thereof, said panels being foldable along said joined edges, at least one closure flap along an edge of one panel projecting outwardly therefrom and being foldable thereon, a panel joined to said one panel being foldable onto said flap to form said pocket,

its language I am given to understand that the patent covers any record album formed from a single unitary blank, comprising at least four panels which will be folded so as to provide at least six surfaces on which printed matter can appear. The four other claims of the Kosterka patent[5] are merely more specific variations of Claim 1: each describes a different configuration of panels, yet all embody the four panel/six surface concept.

In the introductory description of the patent, Kosterka described the purposes of his invention. He explained that "prior art phonograph record jackets have not taken full advantage of a record jacket as a merchandising piece which can be utilized as a display package for marketing and selling record albums." The uniqueness of his invention, the description continues, lies in its function as a display device; further, the greater expanse of surface available makes possible the creation of albums which include separable picture posters of the recording artist.

In his affidavit submitted in opposition to this motion, Kosterka also asserts that prior to his invention, the only six surface albums in existence were created from blanks comprised of six panels. The invention of a four panel/six surface album effected a substantial saving in printing costs,[6] and afforded an ideal solution to "the pressure . . . on album manufacturers to create packages that allowed for a maximum amount of graphic display at the lowest cost."

The Shore patent, which defendant claims is the applicable prior art, is described by the inventor as follows: "A phonograph record receiving jacket fabricated from a unitary blank of cardboard sheet material and formed to provide an internal record receiving pocket. The blank being elongated to provide three side by side panels, separated by score lines, that are bendable upon one another. Two of the panels are permanently joined to define the pocket with the other panel serving as a cover."

The Shore patent, in other words, contemplates an album formed from three panels and yielding four surfaces on which printed matter may be placed. The Kosterka patent involves a more elaborate configuration of panels, but the two patents have one critical feature in common. Each employs two panels to form the record receiving pocket, and those two panels thus yield only two printable surfaces. The remaining panels—one in the Shore patent, at least two in the Kosterka patent—are not part of the record pocket and thus can be used for displaying printed matter on both sides. The similarity between the two patents is further demonstrated by plaintiff's response to defendant's Request for Admission No. 3. Plaintiff admitted that if the preferred embodiment of the Shore patent included a fourth panel integrally formed with the blank end extending from one of the free edges, that configuration would (a) have six surfaces for carrying printed matter and (b) would be covered by claim 1 of the Kosterka patent. The

---

said pocket being closed on at least two sides and having an opening for receiving the phonograph record disc said other panels being foldable on their associated fold edges to provide hinged panels whereby two of said panels each provide at least one readily visible surface on which intelligence matter may be carried and two of said panels each provide two readily visible surfaces when opened to obtain a total of at least six readily visible surfaces on which intelligence matter may be carried."

5. Plaintiff only contends that defendant's albums infringe claims 1 and 4 of the Kosterka patent. See affidavit of Michael J. Sweedler in support of defendant's motion, at ¶ 2.

6. Kosterka asserts (at pp. 2 and 3 of his affidavit) that the costs of printing an album amount to approximately 1¢ per panel. A six panel/six surface album thus costs six cents, whereas a four panel/six surface album only costs 4¢. In a common large order, which he estimates at 1 million albums, this amounts to a saving of $20,000.

difference between the Shore and Kosterka patents may thus be reducible to the addition of a single panel.

The progress of the Kosterka application through the patent office is also instructive in determining its validity under § 103. The file wrapper discloses that on April 22, 1970, claim 1 of the patent was rejected under § 103 "as obviously directly readable" on three patents, one of which was Shore's. Kosterka traversed this rejection and resubmitted the claim in slightly revised form. In this resubmission disputing the examiner's conclusion, Kosterka sought to differentiate his patent from Shore's by invoking arguments that have already been rehearsed here. He contended that his invention enhanced the marketing appeal of the album, and that the Shore patent "provides merely four readily visible surfaces, or 66⅔ percent" of the surfaces his album afforded. For reasons that remain undisclosed, the patent examiner then reversed himself and allowed the revised first claim as well as the other claims now comprising the patent. Clearly, then, the instant motion is by no means the first occasion on which the validity of the Kosterka patent has been questioned in light of the prior art.

■ I have concluded that all of the claims of the Kosterka patent are invalid for obviousness within the meaning of 35 U.S.C. § 103. I concede that, as plaintiff contends, simplicity is no bar to patentability, see American Safety Table Company v. Schreiber, 269 F.2d 255 (2nd Cir. 1959), and that even seemingly minor modifications in prior inventions have been deemed patentable. United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966). Plaintiff claims that the addition of a single panel has yielded various "new and unexpected results", but I find the contentions unpersuasive. The "new and unexpected" results asserted are, first, the reduction in cost attendant upon producing a six surface album comprised of but four panels, and second, the improvement in merchandising techniques which the additional panels make possible.

I find that the Shore patent rendered both of these results obvious to anyone skilled in the relevant art. The Shore patent also contains fewer panels than surfaces, which is the essence of the reduction in costs as plaintiff has portrayed it. Likewise, the Shore patent would afford a 25% reduction in printing costs over a 4 panel/4 surface album, a saving parallel to that claimed by the plaintiff.

The claim of uniqueness in merchandising is similarly unfounded. The Shore patent recites as one of its purposes the creation of an album "which may receive a multicolor lithograph on three jacket panels." It thus suggests some of the aesthetic innovations to which the Kosterka patent lays claim. Equally unimpressive is the plaintiff's observation that its patent provides a configuration of panels that permits the separation of a picture poster of the recording artist. A simple perforation between the panels of the Shore patent will yield the same result. I can therefore only conclude that in view of the Shore patent, the improvements which the Kosterka patent represent would have been obvious not only to one skilled in the pertinent art, but even to the ordinary layman. The fundamental innovation of the Shore patent appears to be the use of a panel that does not form part of the record pocket, and which thus can be used for display purposes on both of its surfaces. The Kosterka patent simply adds more such panels.

■ I shall advert briefly to the contention, routinely invoked by holders of patents in such litigation, that a presumption of validity attaches to a patent issued by the patent office. 35 U.S.C. § 282. Our Court of Appeals has long been of the opinion that "the most that can be said of the presumption is that it requires that reasonable doubt on the question of validity be resolved in favor of the patent holder." Lorenz v. F. W. Woolworth Co., 305 F.2d 102 (2nd Cir.

1962); Rains v. Niaqua, Inc., 406 F.2d 275 (2nd Cir.), cert. denied, 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969); Lemelson v. Topper Corporation, 450 F.2d 845 (2nd Cir. 1971). I entertain no such doubt here.

It has also been held that the presumption of validity is strengthened when the most pertinent prior art has been considered by the patent office. Tapco Products Co. v. VanMark Products Corp., 446 F.2d 420 (6th Cir. 1971). Nevertheless, the consideration given the Shore patent by the patent office hardly inspires confidence regarding the thoroughness of its methods. The examiner first rejected the Kosterka patent, relying in part on consideration of the Shore patent. All that was required to secure a reversal of this decision was a meaningless rewording of the claims and a brief affidavit in opposition. The examiner offered no reasons for his conclusion that what was obvious in April had become less than obvious by August. In view of this course of conduct, I decline to attach any importance to the examiner's consideration of the pertinent prior art in reaching his conclusion.

In assessing the weight to be accorded the patent office's determinations, I should also repeat the Supreme Court's observation that "[w]e have observed a notorious difference between the standards applied by the Patent Office and by the courts." Graham v. John Deere Co., supra, 383 U.S. at 18, 86 S.Ct. at 694. And in concluding I can only echo Judge Tenney's remarks in *Ken Wire*, which I find applicable with full force here: "To be honest, this Court is rather amazed to find that a patent as flimsy and as spurious as this one has been granted by the Patent Office. Clearly, the Patent Office is still not applying the strict constitutional standard required in all patent cases." 338 F.Supp. at 628. See also Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950) (Douglas, J., concurring).

### III.

One question only remains. The complaint sounds in unfair competition as well as patent infringement, and is replete with vague references to unfair practices in which the defendant supposedly engaged. Defendant's only reference to this issue in its motion for summary judgment is the statement in a footnote that "[t]he alleged unfair competition is the act of patent infringement . . . and, therefore, must fail if the count for patent infringement fails." Plaintiff did not respond to this contention in its papers—nor was it required to—but its attorney insisted at oral argument that its unfair competition claim survived even if its patent was found invalid. This question has not been briefed by either party, nor has it been the subject of any meaningful discovery; an examination of the interrogatories and answers on file in this court discloses that the discovery undertaken thus far has been directed solely to the questions of patent validity and infringement. I therefore do not rule on the sufficiency of the unfair competition claim at this juncture.

To conclude, I hereby find that plaintiff's patent is invalid under 35 U.S.C. § 103, and defendant's motion for summary judgment is granted to that extent.[7]

It is so ordered.

---

7. Plaintiff has also submitted a frivolous motion to strike paragraphs 3–10 of the affidavit of Lewis Garlick, the president of Ivy Hill. It alleges that the matter set forth in these paragraphs either pertains to the question of infringement, not now before me, or is based on information and belief and thus cannot be considered in a summary judgment motion. I have made use only of a portion of paragraph 3 in describing the nature of Ivy Hill's business at footnote 2, supra. Any prejudice to plaintiff in such use escapes me. Because I have not relied on any other information contained in the affidavit, the motion is denied as moot.