OPINION OF THE COURT
Robert D. Lippmann, J.
The issues presented by the facts of this case are whether an oral agreement for a tenancy measured by the tenant’s lifetime entered into with a representative of the City of New York is valid under the Statute of Frauds, and if valid, whether binding on the city, and if binding on the city, to what durational extent and with what effect on the city’s legal capacity to institute the instant summary holdover proceeding.
Since 1940 respondent Jacob Heller has occupied premises used as law offices at 51 Chamber Street, New York City. Until 1965 the building was owned by the Emigrant Industrial Savings Bank. In 1965 New York City acquired title to the building in a condemnation proceeding. From 1965 to 1980 Mr. Heller was a month-to-month tenant.
In 1969 the city sought possession of the premises and an order of eviction against all occupants of 51 Chamber Street. The matter came before Justice Geller in the Supreme Court in a proceeding to which respondent was a party. In his decision of *815 February 6, 1969, Justice Geller awarded possession to the city with a stay of the order subject to an allocation from the capital budget of funds for a new civic center, the purpose for which the condemnation proceeding had been initiated. The project was abandoned because of the city’s fiscal crisis. To date funds for the project have not been allocated.
Pursuant to Justice Geller’s order, continued possession by the occupants of the premises during the stay was to be on the same terms then existing, with the occupants to pay the city for use and occupancy. Upon default of such payment, the city could institute summary proceedings for nonpayment of rent in the Civil Court.
In July 1980, Mr. Heller (and his brother Joseph, now deceased) and George Croucher, then Director of the Bureau of Property Management, Division of Real Property of the City of New York, entered into an oral agreement by which terms respondent agreed to relinquish suite 1409 on condition the monthly rent for suite 1425, the premises here at issue, remain at $201 and that the term of the tenancy last until both Joseph and Jacob Heller die. As a result of this agreement, respondent removed all its storage and filing cabinets, copying machine, records and files from suite 1409 into suite 1425, whose total personal usable space was as a consequence considerably diminished.
Matters remained this way until May 1984 when petitioner served a 30-day notice of termination effective June 30, 1984 upon respondent. Upon his failure to vacate, this holdover proceeding was commenced.
Petitioner asserts that respondent is a month-to-month tenant and since he refused the rental increase proposed by petitioner, this proceeding for possession is proper. To respondent’s defense that his tenancy is protected by an oral lease, petitioner raises the barrier of the Statute of Frauds as well as the lack of authority of Mr. Croucher to bind the city by his acts.
Respondent also claims he is protected by Justice Geller’s order which provided that during the stay the occupants of 51 Chamber Street are to remain in possession under the terms existing in 1969.
THE STATUTE OF FRAUDS
General Obligations Law § 5-701 states:
“a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and sub *816 scribed by the party to be charged therewith, or by his lawful agent, of such agreement, promise or undertaking:
“1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime”.
Section 5-703 (2) states: “A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing.”
The statutory language makes clear that a writing is required where performance is for longer than one year. However, where a contract is capable of being performed within a year, it does not fall within the strictures of section 5-701 (a) (1). (Ken Wire & Metal Prods. v Columbia Broadcasting Sys., 338 F Supp 624; Tradeways Inc. v Chrysler Corp., 342 F2d 350 [2d Cir 1965], cert denied 382 US 832.) The controlling words here are “capable of”. Thus even if performance extends beyond a year, if it was capable of performance within a year measured from the date of the agreement, the Statute of Frauds does not require a writing. Similarly, where an oral lease could be construed to be for a period less than a year, it does not fall within section 5-703 (2). (Pier v Margulies, 73 NYS2d 309 [Sup Ct, Kings County 1947].)
In determining whether the oral contract is within the prohibition of the Statute of Frauds, it is the endurance of the defendant’s liability, not the plaintiff’s, that is the deciding factor. (Angileri v Vivanco, 139 NYS2d 728, 730 [Sup Ct, NY County 1955]; Archer v Hamilton Wright Org., 155 NYS2d 556 [Sup Ct, Nassau County 1956].) In the case before me, respondent is an individual whose lifetime is finite and capable of enduring less than a year. I note in passing, though it is not legally pertinent, that respondent was 76 years old in 1980 when the oral agreement was made. Respondent has no liability under the agreement that reaches beyond his lifetime. A lifetime can be shorter than a year. Hence, this lease was capable of performance within one year of the making of the agreement. Where a contract can be so construed, it is free of the requirement set out by General Obligations Law §§ 5-701 (a) (1) and 5-703 (2).
Accordingly, the oral agreement between respondent and George Croucher is not invalid for failure of being reduced to a writing.
*817 IS THE AGREEMENT BINDING UPON THE CITY?
Petitioner argues that an oral agreement by an employee of the city is not binding upon the city.
As Director of Property Management, Division of Real Property of the City of New York, George Croucher was not a mere employee but one in authority, apparent or real, to manage the real property of the city. There is no way to deal with the city but through its agents, simply because there is no other way to deal with a municipal entity.
Relying upon Seif v City of Long Beach (286 NY 382 [1941]), as authority, petitioner states that the doctrine of apparent authority may not be relied upon when dealing with a municipality. My reading of Seif leads me to understand that central to its holding was not the issue of apparent authority but rather the issue of ratification. And ratification is the issue before me. The Set/case dealt with services rendered by an attorney retained by the Mayor of Long Beach in contravention of the charter of the city which contained no provision conferring authority upon the Mayor to retain special counsel to represent the city in litigation. The Seif court held: “Ratification by a municipal corporation, like ratification by a private corporation or by an individual, ‘may be by express assent, or by acts or conduct of the principal, inconsistent with any other supposition than that he intended to adopt and own the act done in his name’ ” (286 NY, at pp 386-387, citing Petersen v Mayor of New York, 17 NY 449, 453 [1858]).
If, however, an act is outside the scope of the corporate or municipal authority, such act is invalid and cannot be ratified. Accordingly, the Seif court held there could be no ratification of an act not legislatively authorized. But it is without question that Seif asserts the viability of the doctrine of ratification without exempting its applicability to municipalities.
The question then before me is whether George Croucher’s act was an act that could be ratified, and if so, whether the city did in fact ratify it.
Petitioner is bound by Administrative Code of the City of New York § 1082b-2.0 (b), (c). It empowers the commissioner to lease property and determines the duration of such leases.
Section 1082b-2.0 (b) states: “The commissioner may lease or rent * * * property * * * for such rental or other charge * * * as he may determine * * * where the terms of such lease * * * is less than one year except that where such property * * * has previously been leased * * * the term of such lease * * * may be for a *818 term of up to five years, and the rental or other charge fixed by the commissioner therein does not exceed fifteen hundred dollars per month”.
The same section requires a filing with the department and with the Board of Estimate of a written certificate signed by two officers of the department stating that the rent fixed is fair and reasonable before the commissioner enters into such a lease agreement.
The statutory language expressly permits leasing of city property for one year and up to five years. Thus, there is no legislative impediment — as in Seif (supra) — to prevent the ratification of an act performed by the former Director of Property Management.
The city has neither expressly nor by conduct repudiated the lease agreement. On the contrary, it has accepted the benefits of the bargain by taking possession of suite 1409 and accepting monthly rent payments from July 1980 through June 1984 in the amount of $201 for suite 1425, with its diminished personal usable space.
As to the filing requirement set out by section 1082b-2.0 (b), this appears to be essentially a ministerial act, one to be performed by the commissioner, not by the lessee. Its purpose is to certify that the rental charge is fair and reasonable. Given Justice Geller’s decision that the occupants of 51 Chamber Street were to retain possession under the then existing terms, the question of a fair and reasonable rent should not be raised as a barrier to ratification. Moreover, failure by the city to carry out the necessary procedural or ministerial steps should not be used by petitioner as a sword to deprive respondent of the benefits of his bargain.
For a period of four years, from 1980 to 1984, the city raised no objections to the terms of the oral agreement. The contractual obligations thereunder were performed on both sides just as under any written lease arrangement binding on both sides. The city’s conduct over so prolonged a time is inconsistent with any showing other than an intent to adopt as its own its agent’s act. The inescapable consequence of such conduct is a ratification by the city of George Croucher’s agreement with respondent.
I come now to the question of the duration of the lease.
Pursuant to section 1082b-2.0 (b) the commissioner may lease property for a rental charge of less than $1,500 a month for a term of up to five years where such property has previously been leased by the city. Mr. Heller has been a lessee of the premises in *819 question since 1940, and a tenant of the city since the city took title of the building in 1965. Under these circumstances, the commissioner is authorized to lease the premises for a term of up to five years. The law does not permit a leasehold of city property at less than $1,500 per month for a term exceeding five years. Such a leasehold could, therefore, not be ratified. Accordingly, the court rules that under the law the lease agreement can be ratified only to the durational extent of five years from the date the agreement became effective, that is, since July 1980. Consequently, respondent’s lease will expire July 31, 1985.
This being the case, the city’s notice of termination served upon respondent to take effect June 30,1984 was premature by at least one year.
Consistent with the above discussion, the court dismisses the holdover petition.