OWENS–ILLINOIS, INC.,
Plaintiff-Appellee,

v.

EMHART INDUSTRIES, INC.,
Defendant-Appellant.

No. 22, Docket 80–7240.

United States Court of Appeals,
Second Circuit.

Argued Oct. 6, 1980.

Decided March 12, 1981.

Rehearing Denied May 28, 1981.

Arthur D. Gray, New York City (Hugh A. Chapin, Philip J. McCabe, Edwin Baranowski, New York City, on brief) (Kenyon & Kenyon, New York City, John D. Del Ponti, H. Samuel Kieser, Hartford, Conn., of counsel), for defendant-appellant.

Arthur Raisch, Detroit, Mich. (Basil C. Foussianes, Detroit, Mich., on brief) (Barnes, Kisselle, Raisch & Choate, Detroit, Mich., of counsel), for plaintiff-appellee.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND, Circuit Judge, and BLUMENFELD, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the District of Connecticut upholding the validity of a 1971 patent covering "Apparatus for Handling Mold Charges of Molten Glass."[1] The judgment also held that defendant had infringed plaintiff's patent and that plaintiff was entitled to an accounting and an injunction against further infringement. We reverse.

Defendant's principal contention on appeal is that, because the differences between the Trudeau patent and a 1935 patent for a "Glass Working Machine"[2] would have been obvious to a person having ordinary skill in the pertinent art, the Trudeau patent did not satisfy the conditions for patentability contained in 35 U.S.C. § 103. Because this is a pivotal issue in the litigation, a logical starting point for our discussion is the 1935 Headley patent.

The Headley invention contemplated a machine for the automatic blow molding of narrow-neck glassware by the injection of

---

* For the District of Connecticut, sitting by designation.

1. Patent No. 3,597,187 (Reissue No. 28,073) (the "Trudeau" patent), which was issued to Urban Trudeau and assigned to plaintiff.

2. Patent No. 2,013,463 (the "Headley" patent), which was issued to Benjamin Headley and David DuBois and assigned to defendant's predecessor, Hartford-Empire Co.

molten glass into four or more molding units, each embodying a blank or parison mold and a blow or finishing mold. Our concern is not with the molds, but with the manner in which the glass was designed to reach them. The Headley design calls for charges, or gobs, of glass to be delivered to each mold in a trough, or chute. These chutes branch out in radial fashion from a trough-shaped, tilted scoop, or "interceptor", whose lower end may be rotated into position above the receiving end of each chute. The molten glass, sheared into gobs, is fed onto the scoop, which is rotated between feeds so that each gob is deposited onto the head of a different chute.

The scoop is fastened to the top of a shaft, which has a segmental gear at its lower end. The gear meshes with a rack bar, which is moved back and forth by the action of a cam. The rack bar's movement, when transmitted to the segmental gear, causes the interceptor shaft to oscillate. The cam is shaped in such a manner that its movement causes the lower end of the scoop to be brought successively into relationship with the heads of the chutes, with sufficient dwell at each chute to permit the delivery of a glass gob.

Although the Headley patent was owned by the defendant, it was never developed commercially. Prior to Headley, defendant had been manufacturing a gob-distributing device that worked on an entirely different principle. Instead of a single oscillating scoop which supplied all of the chutes, defendant's machine had a separate scoop for each chute. These scoops, functioning much like human hands, moved in and out under the orifice through which the glass gobs were fed, catching the gobs and guiding them onto the chute. The movement of the scoops was timed, so that as one scoop moved in, another moved out.

About the time that Headley's design was conceived, the industry developed a method of forming two bottles at the same time by putting two cavities into each molding unit, or "individual section", as they were called.

This required two gobs of glass to be fed simultaneously into the individual sections and necessitated the use of two chutes for each section, onto which the two gobs had to be fed simultaneously. Defendant accomplished this by putting two closely-spaced orifices in the bottom of the molten glass feeder, or "forehearth", and changing the reciprocating single scoops into reciprocating double scoops. These scoops were so designed that when activated into position, the receiving end of each scoop was directly under a gob-feeding orifice and the dispensing end was aligned with the head of a chute.

This arrangement worked satisfactorily so long as there were no more than six double-gob individual sections in the feeding line. When more sections were added, the reciprocating scoops became too crowded and began to collide with each other, much like the keys of a too-rapidly operated typewriter. Both plaintiff and defendant, working independently of each other, looked for a better system and, in a relatively short period of time, both came up with a machine using an oscillating double scoop to feed double chutes for up to eight or more individual sections.[3] The Trudeau design was patented first.

Trudeau uses two scoop-topped shafts instead of the single shaft of Headley, positioning them so that the upper end of each scoop is under a separate gob-feeding orifice. Gears at the base of the two shafts mesh with a single sector gear, which oscillates the shafts simultaneously. The scoop serving the orifice which is the more distant from the chutes oscillates beneath the one serving the closer orifice. Collisions between the lower scoop and the shaft of the higher one are avoided by shaping the portion of the shaft immediately below the higher scoop in the form of a picture frame. The interior of the frame provides an open space, through which the lower scoop projects and in which it can operate without obstruction. The sequence of operation is controlled by a cam, which causes the lower

3. Defendant's patent, No. 3,721,544 (the "Bystrianyk" patent), was issued to Wasyl Bystria- nyk and Francis Sarkozy and assigned to the defendant.

ends of the scoops to move from chute to chute in a predetermined, but not necessarily numerically ascending, order.

The Bystrianyk design avoids collisions between the rear scoop and the front shaft by eliminating inferior supporting shafts and supporting the scoops from above. The scoops in Bystrianyk's machine are attached to the bottom of the shafts rather than to the top. The shafts have a hollow interior, so that the gobs of glass can be fed through the shafts and onto the scoops. The shafts are rotated by a spur gear at their upper end, which meshes with a rack bar whose movement is controlled by a cam. The tops of the scoops are, of course, positioned below the gob-feeding orifices when the machine is in operation.

We need not consider the interesting question whether defendant's machine infringes on the Trudeau patent, unless we first determine that Trudeau's patent is valid. Because we conclude that it is not, we will confine our discussion to that aspect of the case.

In upholding the validity of the Trudeau patent, the district court placed great emphasis on secondary considerations, such as long-felt need and commercial success. Defendant contends that the district court's findings of long-felt need and commercial success are without support in the record. There is indeed little evidence of extensive, but unsuccessful, research aimed at solving a pressing problem. The reciprocating scoops worked satisfactorily in machines having no more than six individual sections, and union rules prohibited the use of more than six sections. Within a short period of time after the rules were changed, plaintiff's and defendant's machines were developed.

■ Assuming, however, that the district court's findings as to secondary considerations were correct, defendant argues, and we agree, that secondary considerations will not support a claim of invention if the subject matter of the patent does not pass the section 103 test of non-obviousness. *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 282–83, 96 S.Ct. 1532, 1537–38, 47 L.Ed.2d

784 (1976); *Digitronics Corp. v. New York Racing Association,* 553 F.2d 740, 748–49 (2d Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 187, 54 L.Ed.2d 133 (1977); *Julie Research Laboratories, Inc. v. Guildlines Instruments, Inc.,* 501 F.2d 1131, 1135–36 (2d Cir. 1974). On this test, Trudeau's patent does not merit a passing grade.

■ This Court needs no great technological skill to comprehend the drawings, photographs, specifications, and patent claims that are in evidence. Counsel for both sides have painstakingly numbered and colored parts and explained their function. Because of this, we are in substantially as good a position as was the district court to understand the mechanical functions of the several patented machines and to determine the legal issue of patent validity. *Maclaren v. B–I–W Group, Inc.,* 535 F.2d 1367, 1371 (2d Cir.), *cert. denied,* 429 U.S. 1001, 97 S.Ct. 531, 50 L.Ed.2d 642 (1976); *Julie Research Laboratories, Inc. v. Guildlines Instruments, Inc., supra,* 501 F.2d at 1135–36. Despite the presumption of validity created by the issuance of the Trudeau patent, *see Lemelson v. Topper Corp.,* 450 F.2d 845, 849 (2d Cir. 1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1253, 31 L.Ed.2d 456 (1972), we are convinced that a person having ordinary mechanical skill would have had little problem in moving from the single rotating scoop of Headley to the double rotating scoop of Trudeau.

We do not fully subscribe to defendant's argument that Trudeau is simply a "doubling" of the prior art of Headley, and thus an unpatentable invention. *See In re Abrahamsen,* 53 F.2d 893, 894 (C.C.P.A.1931). However, we do not believe that anything more than ordinary skill was required to discover that two scoop-topped shafts could be oscillated simultaneously by means of a single cam-controlled rack bar or sector gear. Once a second shaft and scoop are added, all that is needed is some arrangement to prevent the second scoop from colliding with the shaft of the first. Trudeau's design accomplishes this in one way; Bystrianyk's accomplishes it in another. The picture frame device used by Trudeau

is not even defined in the patent's claims, although it is described in the specifications. Moreover, the district court's finding of infringement by defendant's machine, which contains no inferior shafts, is inconsistent with any contention that the picture frame device is an integral part of plaintiff's claims. *See Lerner v. Child Guidance Products, Inc.*, 406 F.Supp. 560, 567 (S.D.N.Y. 1975), *aff'd* 547 F.2d 29, 30–31 (2d Cir. 1976). Trudeau's decision to rotate his scoops from chute to chute in a predetermined order was not a substantial contribution to the prior art. We find nothing else in the claims of his patent that expanded the frontiers of scientific achievement.

In applying the section 103 test of obviousness, a court must ascertain the differences between the prior art and the claims at issue. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). We conclude that Trudeau simply used the existing fund of public knowledge in a manner that would be obvious to one having ordinary skill in the mechanical arts. His patent is therefore invalid for want of invention. The judgment is reversed.