**DIELECTRIC LABORATORIES, INC., Plaintiff,**

v.

**AMERICAN TECHNICAL CERAMICS, Defendant.**

**No. 79 Civ. 1345.**

United States District Court,
E. D. New York.

Aug. 4, 1982.

Stuart A. White, Curtis, Morris & Safford, P. C., New York City, for plaintiff; Richard von K. Bruns, Bruns & Jenney, Syracuse, N. Y., of counsel.

Edward H. Loveman, Melville, N. Y., for defendant.

1. Although defendant moves for "partial" summary judgment, this motion will be treated as one for summary judgment as there can be no cause of action for infringing an invalid patent. *See generally Monaplastics, Inc. v. Caldor, Inc.,* 378 F.2d 20 (2d Cir. 1967).

2. Neither party objected to Magistrate Jordan's finding that there was no prior invention, and that finding will therefore not be discussed here. *See* 28 U.S.C. § 636(b)(1).

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Defendant American Technical Ceramics (ATC) moves for partial summary judgment, pursuant to Fed.R.Civ.P. 56, in this action for patent infringement arising under 35 U.S.C. §§ 271 and 281.[1] ATC contends that the four claims of plaintiff's patent remaining in controversy are invalid on grounds of anticipation, obviousness, and prior invention. By report dated January 21, 1982, Magistrate Jordan recommended that defendant's motion be granted on the ground of obviousness only. Both parties have filed objections to the magistrate's report and recommendation, which have been reviewed by this Court.[2] For the reasons set forth below, this Court adopts the magistrate's report and recommendation, and grants defendant's motion for summary judgment, holding that plaintiff's patent is invalid as obvious.

### Background

Plaintiff Dielectric Laboratories, Inc. (Dielectric) manufactures stripline circuits and capacitors for use in these circuits. The capacitors are composed of a dielectric body consisting of such materials as porcelain, ceramics or crystal, with electrodes covering both faces of the capacitors. The electrodes are made of gold. On September 12, 1978, U.S. Patent No. 4,114,120 for a "stripline capacitor" was issued to the inventor, David Lupfer, who assigned the patent to the plaintiff. Defendant ATC is a manufacturer of capacitors. One of its capacitors, the Microcap capacitor, is the allegedly infringing device.[3]

The purpose of the patent in suit is to minimize circuit impedances in stripline circuits. Such impedances result from the

3. Plaintiff contended in its complaint that ATC infringed its patent by making, selling and using capacitors embodying the patented invention, and by inducing and procuring others to do so. Plaintiff's direct and contributory infringement allegations have been dismissed pursuant to prior partial summary judgment dispositions in this case.

placement of capacitors in a circuit of a different width than the capacitor. The patent is directed to the concept of matching the widths of these components, and then varying the length of the circuit and dielectric composition of the capacitor to achieve the desired capacitance.

In support of its summary judgment motion, ATC contends that capacitors meeting every capacitor limitation in claims 1 and 2 of the patent in suit[4] were known or used by others prior to the earliest date of conception of plaintiff's invention, which both sides concede to be June 17, 1975. ATC also contends that prior to such date, it was known that impedance discontinuities result from a mismatch in the width of a stripline circuit and a capacitor mounted thereon, and that combining various stipline circuits and capacitors was done prior to June 17, 1975. Citing plaintiff's answers to defendant's request for admissions, ATC shows that plaintiff's assignor, the inventor Lupfer, relied on the existing prior knowledge and prior art in selecting the dielectric (claim 2), and in determining suitable composition for the electrode barrier (claim 3) and its bonding to the dielectric (claim 20).

*Discussion*

■ Any determination of patentability must be made in view of the constitutional standard of Article I, Section 8, Clause 8 of the Constitution. The provision authorizes Congress to establish laws "[t]o promote the progress . . . of . . . useful arts, by securing for limited times to . . . inventors the exclusive right to their discoveries." This clause both grants power and limits rights. *See Graham v. John Deere Co.*, 383 U.S. 1, 5, 86 S.Ct. 684, 687, 15 L.Ed.2d 545 (1966).

The clause enables Congress to grant to inventors a limited monopoly, as an economic incentive to further human knowledge and scientific progress. On the other hand, such monopolies are not to be freely given, because of the importance of the need for a free exchange of knowledge and ideas. Thus, in determining whether an invention warrants a patent monopoly, with the consequent removal of knowledge and materials from the public domain, Congress has established conditions for patentability in 35 U.S.C. §§ 101, 102 and 103. Basically, these conditions are novelty, utility, and non-obviousness.

## I. The Anticipation Claim

Under 35 U.S.C. § 102(a), an inventor is entitled to a patent unless the invention was known or used by others in the United States, previously patented, or described in a printed publication before the invention thereof by the applicant. Magistrate Jordan found that the patent in suit was not anticipated by the prior art pursuant to the terms of § 102(a), although the invention combines prior knowledge and art. In his dismissal on the anticipation claim, the magistrate concluded that the fact that the art was previously known does not necessarily defeat a patent based on a new combination of those factors.

Defendant, in its summary judgment motion and in its objections to the magistrate's report and recommendation, contends that plaintiff's invention was anticipated by prior art and knowledge in the public domain. As an example of prior knowledge that impedance discontinuities result from dif-

---

4. The claims in suit are claims 1, 2, 3 and 20, which read as follows:

1. In a stripline circuit, having a stripline of Width W, an improved capacitor comprising:
(a) a plane parallel dielectric body having upper and lower faces, the width of said dielectric being at least approximately equal to said width W of said stripline;
(b) a first electrode on the lower face of said dielectric, said electrode completely covering said face and thus also having said width W; and
(c) a similar second electrode on the upper surface of said dielectric.

2. The invention according to claim 1 wherein said dielectric is selected from inorganic materials, the group consisting of electrical porcelains, high dielectric constant ceramics, single crystals, and other forms of inorganic dielectrics.

3. The invention according to claim 2 wherein said electrodes comprise a metal barrier with gold outer surface coatings and wherein said electrodes are bonded to said dielectric. Claim 1 is the only independent claim, and is incorporated by reference in the remaining 20 claims comprising the patent.

ferences in width between a capacitor and a circuit, ATC points to a March 1973 article in *Microwave* magazine entitled, "Packaging Discrete Variable Capacitors in MICs," which discusses this concept. ATC also cites deposition testimony of Richard Dubois, a microwave technician and engineer. Dubois asserted that he had and used the knowledge applied in the patent in suit for the past ten or fifteen years. In further support of its claim, ATC points out that the inventor of the patent admitted in his deposition that there was prior knowledge in the field that changes in the width of striplines and capacitors created problems, which could be eliminated by keeping the circuit and capacitor the same width. Defendant also produced sales brochures of other manufacturers, showing the commercial availability of circuits and capacitors of various widths prior to the invention's conception date.

Every patent is presumed to be valid. 35 U.S.C. § 282. Thus, a party asserting patent invalidity bears a heavy burden of proof. This burden is particularly difficult when an anticipation claim is asserted. Anticipation is a technical claim of invalidity, and must therefore meet strict standards. *Schroeder v. Owens-Corning Fiberglas Corp.*, 514 F.2d 901, 904 (9th Cir. 1975). Anticipation occurs only when a *single* prior invention or publication contains *every* element of the claim in issue. "[A] patent is not anticipated when its elements are distributed among several prior publications or devices." *Paeco Inc. v. Applied Moldings, Inc.*, 562 F.2d 870, 875 (3d Cir. 1977). *See also Schroeder v. Owens-Corning Fiberglas Corp., supra*, at 903–04.

In the instant case, although the various elements and concepts that Lupfer combined to make his invention were known and available, they had not theretofore been united in the same way to perform the same function. Thus, although

putting the existing pieces together as Lupfer did may have been obvious, invalidating the patent under 35 U.S.C. § 103, *see* discussion II *infra*, there was no anticipation under § 102(a).

## II. *Obviousness*

Defendant also contends that plaintiff's patent is invalid because it is so obvious as to defeat patentability. Under 35 U.S.C. § 103, non-obviousness is a condition of patentability. § 103 reads as follows:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Magistrate Jordan, in his report and recommendation, agreed with defendant's obviousness claim, finding that the invention was not patentable. Simply because no one thought of combining the known elements in the same way before does not make an invention patentable. As the magistrate observed, "[T]his patent teaches nothing more [than what was already known in the prior art]. To arrive at this conclusion requires no stroke of genius or any spark of inspiration . . . . In short, it is obvious."

Plaintiff objects to the magistrate's finding of obviousness primarily on procedural grounds. Plaintiff first contends that the magistrate failed to submit specific findings of fact, as required by 28 U.S.C. § 636(b)(1) [5] so that the court can "make a

---

5. 28 U.S.C. § 636(b)(1) reads in pertinent part as follows:

Notwithstanding any provision of law to the contrary—(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a

motion for injunctive relief, for judgment on the pleadings, for summary judgment, [etc.] . . . .

(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the

de novo determination of those portions of the report of specified proposed findings or recommendations to which the objection is made." *Id.* This Court finds that although Magistrate Jordan's report is cursory, it is sufficiently clear and specific, as evidenced by the fact that both plaintiff and defendant were able to respond and make specific objections thereto. The report is also clear enough for this Court to make a *de novo* determination of the portions objected to.

■ Plaintiff also complains that the magistrate did not make specific findings of fact as mandated by the Supreme Court in *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545 (1966). Because the obviousness issue is now before this Court for a *de novo* determination, the magistrate's failure to address factual determinations as outlined in *Graham* is not critical.

■ The ultimate question of patent validity is one of law. However, the conditions for patentability must be determined by factual inquiry. In *Graham v. John Deere Co., supra,* the Supreme Court set forth three basic factual inquiries for determining whether a patent is invalid as obvious: (1) the scope and content of the prior art; (2) the difference between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art.

### A. Scope and Content of the Prior Art

■ The scope and content of the prior art may be shown by prior patents, publications describing the prior art, and by affidavits or testimony of persons having knowledge of the prior art. *See, e.g., Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 280, 96 S.Ct. 1532, 1536, 47 L.Ed.2d 784 (1976); *Struthers*

*Scientific & International Corp. v. Rappl & Hoenig Co.,* 453 F.2d 250 (2d Cir. 1972). Defendant has clearly made such a showing.

As discussed in I above, it has been established that Lupfer relied on the prior art, including prior knowledge, in putting together his invention. Lupfer's admitted reliance on the prior art demonstrates that the scope and content of the prior art was sufficiently developed and, defendant's showing of the existence of such prior art substantiates this finding.

### B. Differences Between the Prior Art and the Patent Claims At Issue

Plaintiff makes much of the fact that the prior art did not show that undesirable impedances can result from placement in a stripline of a rectangular, fixed, non-tunable plane parallel plate capacitor, as opposed to a tunable trimmer capacitor, as had previously been done. This difference cannot be held to be substantial enough for patentability, especially in light of basic tenets of patent law that common knowledge should not be removed from the public domain, and that free access to available materials must not be restricted. *See Owens-Illinois Inc. v. Emhart Industries, Inc.,* 644 F.2d 98 (2d Cir. 1981).

It has been demonstrated through the extensive discovery in this case that capacitors of various widths and capacitance values and stripline circuits of various dimensions are commercially available. It has also been shown that the causes of impedance are commonly known in the pertinent field. It thus follows that no one can have a monopoly in combining these known factors, as did the patentee here.

court proposed findings of fact and recommendations for the disposition of the court, of any motion excepted in subparagraph (A),
. . . .
(C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and rec-

ommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

■ Combination patents are subject to strict scrutiny because they remove existing knowledge and access to materials from the public domain. *Graham v. John Deere Co., supra,* 383 U.S. at 6, 86 S.Ct. at 688. As the Supreme Court observed in *Great A & P Tea Co. v. Supermarket Corp.,* 340 U.S. 147, 152–53, 71 S.Ct. 127, 130–31, 95 L.Ed. 162 (1950), "[a] patent for a combination which only unites old elements with no change in their respective functions ... obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men ...." *See also MacLaren v. B–I–W Group, Inc.,* 535 F.2d 1367 (2d Cir.), *cert. denied,* 429 U.S. 1001, 97 S.Ct. 531, 50 L.Ed.2d 612 (1976); *Julie Research Laboratories, Inc. v. Guidelines Institute, Inc.,* 501 F.2d 1131 (2d Cir. 1974); *Reeves Brothers, Inc. v. U. S. Laminating Corp.,* 282 F.Supp. 118 (E.D.N.Y.1968), *aff'd,* 417 F.2d 869 (2d Cir. 1969).

In *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1975), the Supreme Court found that the combination of old elements to produce an abrupt release of water from storage tanks or pools to clean barn floors was not a novel combination, although it was perhaps more effective than the prior art. "[D]esirable benefits without invention will not make patentability." *Id.* at 283, *citing Great A & P Tea Co. v. Supermarket Corp., supra,* 340 U.S. at 153, 71 S.Ct. at 130. *See also Anderson's Black Rock, Inc. v. Pavement Salvage Co.,* 369 U.S. 57, 60, 90 S.Ct. 305, 307, 24 L.Ed.2d 258 (1969); *Hotchkiss v. Greenwood,* 11 How. 248, 13 L.Ed. 683 (1851); *Continental Can Co. v. Old Dominion Box Co.,* 393 F.2d 321, 326 (2d Cir. 1968).

The situation in the instant case is clearly analagous to that in *Sakraida.* Although the structural elements of the patent in suit are not identical to the elements known or used in the prior art, they are so substantially similar as to defeat patentability. *See Reeves Brothers, Inc. v. U. S. Laminating Corp., supra.* The combination of elements comprising the patent does not make such a unique contribution to the art to warrant patentability and justify the removal of prior knowledge and available materials from the public domain.

## C. *The Level of Ordinary Skill in the Pertinent Art*

■ In the leading case of *Hotchkiss v. Greenwood,* 11 How. 248, 13 L.Ed. 683 (1851), the Supreme Court enunciated a test of patentability, *i.e.,* that a patentable invention must evidence more ingenuity and skill than that possessed by an ordinary mechanic acquainted with the business. The *Hotchkiss* test has been codified in 35 U.S. § 103. If an invention would be obvious to one possessing ordinary skill, diligence and knowledge in the pertinent art, it is not patentable. *Struthers Scientific & International Corp. v. Rappl & Hoenig Co.,* 453 F.2d 250, 254–55 (2d Cir. 1972). It is thus necessary to discern the level of ordinary skill in the art.

The ordinary skill level is usually established by experts familiar with the art and the patent in suit. *Schutt Manufacturing Co. v. Riddell, Inc.,* 673 F.2d 202 (7th Cir. 1982). *See generally Continental Can Co. v. Old Dominion Box Co.,* 393 F.2d 321, 325 (2d Cir. 1968); *Monaplastics, Inc. v. Caldor, Inc.,* 378 F.2d 20, 21 (2d Cir. 1967). The deposition testimony of Richard DuBois establishes him as an expert familiar with the art and the patent in suit. His testimony further establishes that the fact that impedances are created by connecting circuits and capacitors of different widths was commonly known to one of ordinary knowledge in the field. This testimony was not refuted by plaintiff in its opposition to defendant's summary judgment motion. DuBois' testimony and other evidence adduced through discovery clearly indicate that defendant's invention would have been obvious to one of ordinary skill in the pertinent art.

*Conclusion.*

■ In light of the foregoing, this Court finds that there are no material issues of fact as to the obviousness of plaintiff's patent in dispute, and concludes as a matter of law that the patent in suit is invalid. Defendant's motion for summary judgment on the ground of patent invalidity therefore is granted.

SO ORDERED.